UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> v.<br><br>WILLIAM J. WISE,<br><br>    Defendant. | Case No.  12-cr-00111-EMC-1<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS**<br><br>Docket No. 180 |

## I. INTRODUCTION

In September 2012, Defendant William J. Wise pled guilty to eighteen criminal charges, including charges for mail and wire fraud and money laundering, *see generally* § 2255 Pet., Ex. 22 (plea hearing), based on a Ponzi scheme in which he falsely induced others to invest money with him and/or affiliated entities.  *See generally* Pet., Ex. 1 (indictment).  In February 2015, this Court sentenced Mr. Wise to a period of 262 months.  *See* § 2255 Pet., Ex. 49 (criminal minutes).  In February 2016, Mr. Wise filed a motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255.  *See* Docket No. 160 (§ 2255 petition).  In the motion, Mr. Wise argues he is entitled to relief because his trial counsel was conflicted, because his trial counsel provided ineffective assistance, and because the government breached the plea agreement.  The Court ordered the government to file a response to Mr. Wise's motion.  The government has now filed its response, which it characterizes as a motion to dismiss.  This is the motion currently pending before the Court.

## II. MOTION TO DISMISS V. ANSWER

As a preliminary matter, the Court should take note that, although the government has categorized its filing as a motion to dismiss, the filing is really a combined motion to dismiss and

United States District Court<br>For the Northern District of California

answer.

The filing is a motion to dismiss to the extent the government argues for dismissal on procedural grounds (*e.g.*, procedural default and waiver). However, to the extent the government argues that, based on the petition and the record submitted, Mr. Wise has failed to state a claim for relief, that is more in the nature of an answer given the habeas context. The Advisory Committee Notes for Rule 4 of the Federal Rules Governing § 2254 Proceedings provide some guidance.[1] The Notes state in relevant part as follows:

> Rule 4 authorizes the judge to "take such other action as the judge deems appropriate [*i.e.*, after the judge does not dismiss the case pursuant to his or her preliminary review]." This is designed to afford the judge flexibility in a case where either dismissal or an order to answer may be inappropriate. For example, the judge may want to authorize the respondent *to make a motion to dismiss* based upon information furnished by respondent, which may show that petitioner's claims have already been decided on the merits in a federal court; that petitioner has failed to exhaust state remedies; that the petitioner is not in custody within the meaning of 28 USC § 2254; or that a decision in the matter is pending in state court. In these situations, *a dismissal may be called for on procedural grounds, which may avoid burdening the respondent with the necessity of filing an answer on the substantive merits of the petition*. . . .

Fed. R. Gov. § 2254 Proceedings, Advisory Committee Notes (emphasis added). As indicated by the italicized language above, a motion to dismiss is usually based on procedural grounds, one that allows the respondent to avoid filing an answer on the substantive merits of the petition. In the instant case, the government's motion raises some procedural issues but also delves into the substance of Mr. Wise's petition as well.

Of course, that the government has filed a combined motion to dismiss and answer is not a problem from a case management perspective. The Court can simply construe the motion to dismiss as both a motion to dismiss (on procedural grounds) and an answer and then proceed from there. The Eastern District of California has taken this approach in some of its prior cases. *See, e.g.*, *Crim v. Benov*, No. 1:10-cv-01600-OWW-JLT HC, 2011 U.S. Dist. LEXIS 45873, at *9 (E.D. Cal. Apr. 28, 2011) ("[D]enying Respondent's motion to dismiss solely on narrow

---

[1] Although the instant case is a § 2255 proceeding, not a § 2254 proceeding, that difference is not material. There is a comparable Rule 4 for the Federal Rules Governing § 2255 Proceedings.

procedural grounds and then requiring Respondent to file an answer that would, in all likelihood, raise the same issues and rely on the same evidence, would be an inefficient use of the parties' time as well as the Court's resources.  Instead, the Court has the inherent power under the Rules Governing Section 2254 Cases to construe Respondent's motion to dismiss as an answer on the merits and Petitioner's opposition to the motion to dismiss as a traverse.").

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL – CONFLICT OF INTEREST

Mr. Wise's plea agreement allows him to file a § 2255 petition only on the ground his trial "counsel was ineffective in connection with the negotiation of this Agreement or the entry of my guilty plea." Pet., Ex. 52 (Plea Agreement ¶ 5).  According to Mr. Wise, his trial counsel, Paul Wolf, provided ineffective assistance because he had a conflict of interest.  The Supreme Court has recognized that effective assistance of counsel encompasses a right to conflict-free counsel at critical stages of criminal proceedings.  *See generally Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980).

Mr. Wise's conflict-of-interest claim actually has two components.  First, Mr. Wise argues that his trial counsel, Mr. Wolf, had a conflict of interest based on how he was appointed to be Mr. Wise's attorney.  Second, Mr. Wise argues that Mr. Wolf had a conflict of interest based on his representation of another individual.

The facts underlying the two theories overlap.  Those facts are as follows.  Tracie Brown was the AUSA working on Mr. Wise's case.  She met Mr. Wolf in February 2012 because she was "interested in interviewing [his] client(s) concerning an investigation that was unrelated to Mr. Wise." Hutchison Decl. ¶ 3.[2]  The client was apparently a retained client.  *See* Hutchison Decl. ¶ 3.  Ms. Brown told Mr. Wise that "he was easy to work with and asked him if he would be interested in another case that she was working on," *i.e.*, the case involving Mr. Wise.  Hutchison Decl. ¶ 4.

Mr. Wolf was ultimately appointed to represent Mr. Wise through the CJA process.  Mr.

---

[2] Buffy Hutchison is one of Mr. Wise's current attorneys.  She and her co-counsel interviewed Mr. Wolf in January 2016.  *See* Hutchison Decl. ¶ 2.

United States District Court
For the Northern District of California

Wolf does not remember the details as to how he was appointed.  *See* Hutchison Decl. ¶ 7.  The docket sheet for the case simply reflects that Judge Cousins signed off on the appointment in late March 2012.  *See* Docket No. 12 (appointment).  Mr. Wolf "agreed to become involved in [Mr. Wise's] case in order to 'curry favor' with [Ms.] Brown for his other clients."  Hutchison Decl. ¶ 6.

A.    First Conflict-of-Interest Theory

As noted above, Mr. Wise first claims a conflict of interest based on how Mr. Wolf was appointed.

As an initial matter, the government contends that this conflict-of-interest theory is procedurally barred.  *See* Mot. at 25.  The government points out that, in his declaration supporting his § 2255 petition, Mr. Wise states: "At some point after he was appointed, [Mr.] Wolf told me that [Ms.] Brown had asked him to take the case."  Wise Decl. ¶ 13.  The government also notes that, in spite of his knowledge of this fact, Mr. Wise never raised an objection with this Court or on direct appeal.  Because Mr. Wise failed to present the conflict-of-interest argument until now – *i.e.*, on collateral attack – the government asserts that he must establish cause and prejudice.  That is, Mr. Wise must show cause to excuse his procedural default and actual prejudice resulting from the claimed conflict.  *See United States v. Frady*, 456 U.S. 152, 167-68 (1982) (stating that "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains"); *see also United States v. Bagnell*, 259 Fed. Appx. 925, 926 (9th Cir. 2007) (articulating *Frady*'s cause-and-prejudice standard).

1.    Cause

A petitioner shows cause by demonstrating "that the procedural default is due to an 'objective factor' that is 'external' to the petitioner and that 'cannot be fairly attributed to him.'" *Manning v. Foster*, 224 F.3d 1129, 1133 (9th Cir. 2000); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986).  According to the government, here, Mr. Wise cannot show an external impediment for his procedural default.  But arguably there is cause (although Mr. Wise does not

4

United States District Court
For the Northern District of California

really address this in his papers). That is, even though Mr. Wise knew that Ms. Brown had

suggested Mr. Wolf be appointed to this case, he had no reason to suspect that that was improper

because Mr. Wolf, his counsel, never suggested that that was a problem – either during trial or

during the appeal period. (Mr. Wolf represented him during both periods.) *Cf. Murray v. Carrier*,

477 U.S. 478, 488 (1986) (stating that, "[s]o long as a defendant is represented by counsel whose

performance is not constitutionally ineffective under the standard established in *Strickland v.*

*Washington*, we discern no inequity in requiring him to bear the risk of attorney error that results

in a procedural default"); *see also Wilder v. United States*, 806 F.3d 653, 658 (1st Cir. 2015)

(noting that "[o]ne way to meet the cause requirement is to show constitutionally ineffective

assistance of counsel under *Strickland v. Washington*"); *Nguyen v. Curry*, 736 F.3d 1287, 1294

(9th Cir. 2013) (noting that an attorney's error during an appeal on direct review may provide

cause to excuse a procedural default). *See, e.g.*, *Jamison v. Collins*, 100 F. Supp. 2d 521, 572

(S.D. Ohio 1998) (finding cause for procedural default where attorney would not have raised a

claim of ineffective assistance of counsel because it would have required the attorney to identify

and argue his own ineffectiveness).

        2.    <u>Prejudice</u>

        Assuming that Mr. Wise gets by the cause prong, then the Court must then move on to the

prejudice prong.

        Mr. Wise argues that he does not have to show actual prejudice because he is claiming that

the appointment of Mr. Wise (either through the influence of Ms. Brown or Mr. Wolf's petitioning

for the job to curry favor with Ms. Brown) constitutes structural error, which is per se prejudicial.[3]

*See Wilder*, 806 F.3d at 658.

        Some courts, including the Ninth Circuit, have indicated that a structural error satisfies the

actual prejudice requirement. *See United States v. Withers*, 638 F.3d 1055, 1066 (9th Cir. 2011)

---

[3] "[A] structural error is one 'affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Wilder*, 806 F.3d at 658. The Supreme Court has found only a structural error "in a 'very limited class of cases'" – *e.g.*, the complete denial of counsel, a biased trial judge, racial discrimination in selection of the grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction. *See Neder v. United States*, 527 U.S. 1, 8 (1999).

5

**United States District Court**
For the Northern District of California

1  (stating that, "because Withers's underlying non-frivolous public trial claim alleges structural

2  error, he can also likely establish prejudice sufficient to overcome procedural default"); *see also*

3  *Owens v. United States*, 483 F.3d 48, 64 (1st Cir. 2007) (stating that, "[i]f the failure to hold a

4  public trial is structural error, and it is impossible to determine whether a structural error is

5  prejudicial, we must then conclude that a defendant who is seeking to excuse a procedurally

6  defaulted claim of structural error need not establish actual prejudice").[4]

7        However, Mr. Wise has failed to establish structural error here. For an error to be

8  structural the question is "whether the error was of sufficient consequence that the criminal

9  process *cannot reliably serve its function* as a vehicle for determination of guilt or innocence."

10  *Peck v. United States*, 106 F.3d 450, 454 (2d Cir. 1997) (emphasis added and internal quotation

11  marks omitted; citing *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). Nothing suggests

12  structural error. The mere fact that Ms. Brown suggested Mr. Wolf's appointment in no way

13  establishes or even reasonably suggests his representation of Mr. Wise would be compromised.

14  Expressing respect for opposing counsel, without more, is innocuous. Ms. Brown may have

15  suggested that Mr. Wolf be appointed simply because she thought he was a competent attorney

16  who acted professionally and was not unreasonably uncooperative. *Cf. Black v. Sec'y*, No. 3:08-

17  cv-928-J-12TEM, 2011 U.S. Dist. LEXIS 107684, at *58 (M.D. Fla. Sept. 21, 2011) (stating that

18  "Petitioner's vague and conclusory claim of a sexual relationship between defense counsel and the

19  prosecutor will not justify habeas relief"); *Gonzales v. Rapelje*, No. 06-CV-10191, 2015 U.S. Dist.

20  LEXIS 44524, at *19 (E.D. Mich. Apr. 6, 2015) (stating that "Petitioner does not show that the

21

22  _____
[4] Other courts, however, disagree. *See, e.g.*, *Hunter v. Bergh*, No. 15-2167, 2016 U.S. App.
LEXIS 4374, at *5 (6th Cir. Feb. 29, 2016) (taking note of petitioner's contention that "prejudice

23  should have been presumed because the trial court's error was structural," but "this court does not
presume prejudice for purposes of procedural default when considering structural error claims");

24  *Hunt v. Houston*, 563 F.3d 695, 704 n.2 (8th Cir. 2008) (stating that, although petitioner "argues
that the alleged constitutional violations in his case resulted in structural error, a finding of

25  structural error does not obviate a petitioner's obligation to show prejudice when attempting to
overcome a state procedural default"); *Thornburg v. Mullin*, 422 F.3d 1113, 1141 (10th Cir. 2005)

26  (stating that, "'[w]hile the nature of a constitutional claim may affect the calculation of cause and
actual prejudice, it does not later the need to make that threshold showing'" and so "even

27  structural errors are subject to state procedural bars"); *Ward v. Hinsley*, 377 F.3d 719, 725-26 (7th
Cir. 2004) (noting that "[t]he procedural default doctrine is 'grounded in concerns of comity and

28  federalism'" and "[t]hese concerns are in no way diminished if the federal claim raised before the
federal habeas court is one of structural error").

**United States District Court**
For the Northern District of California

1  relationship between [defense counsel and the prosecuting attorney], which resulted when each of

2  their surviving parents married later in life, created a conflict of interest").  To the extent Mr. Wise

3  has argued that he needs discovery into the appointment process, the Court does not agree.  Mr.

4  Wise has failed to show the requisite good cause for discovery; speculation is not enough.  *See*

5  Fed. R. Gov. § 2255 Proceedings, R. 6 (providing that "[a] judge may, for good cause, authorize a

6  party to conduct discovery").

7  B.    Second Conflict-of-Interest Theory

8          Mr. Wise's second conflict-of-interest theory is predicated on the fact that (1) when Mr.

9  Wolf first met Ms. Brown, it was because she was "interested in interviewing [his retained]

10  client(s) concerning an investigation that was unrelated to Mr. Wise," Hutchison Decl. ¶ 3, and (2)

11  Mr. Wolf "agreed to become involved in [Mr. Wise's] case in order to 'curry favor' with [Ms.]

12  Brown for his other clients."  Hutchison Decl. ¶ 6.  According to Mr. Wise, Mr. Wolf's

13  "representation of him at the same time he was representing client(s) in other negotiations with

14  [Ms.] Brown created an actual conflict that adversely affected [Mr. Wolf's] representation of

15  [him]."  Pet. at 13.

16          The parties agree that, in assessing this conflict-of-interest theory, *Cuyler*, 446 U.S. at 335

17  (a multiple representation case), provides the governing legal standard.  Under *Cuyler*, "[i]n order

18  to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must

19  demonstrate that an actual conflict of interest adversely affected his lawyer's performance."  *Id.* at

20  348.  The conflict of interest *must be actual*, not just possible.  *See id.* at 350.  But "a defendant

21  who shows that a conflict of interest actually affected the adequacy of his representation need not

22  demonstrate prejudice . . . ."[5]  *Id.* at 349; *see also Mickens v. Taylor*, 535 U.S. 162, 173 (2002)

23  (noting that *Cuyler* "requires proof of effect upon representation but (once such effect is shown)

24  presumes prejudice").

25          The Ninth Circuit has stated that "[t]o show an actual conflict resulting in an adverse

26

27  _____

[5] Note that, if the attorney's actions are the result of neglect and not divided loyalties, a court
simply adopts "the traditional inquiry into deficiency and prejudice that is applicable to . . .
28  ineffective assistance claims [*i.e.*, the *Strickland* inquiry]."  *Hovey v. Ayers*, 458 F.3d 892, 909
(9th Cir. 2006).

United States District Court
For the Northern District of California

1    effect, [the petitioner] must demonstrate 'that some plausible alternative defense strategy or tactic

2    might have been pursued but was not and that the alternative defense was inherently in conflict

3    with or not undertaken due to the attorney's other loyalties or interests." *Hovey*, 458 F.3d at 908.

4    "'With respect to the substance of the plausible alternative strategy, the defendant need not show

5    that the defense would necessarily have been successful had it been used, only that it possessed

6    sufficient substance to be a viable alternative.'" *United States v. Rodrigues*, 347 F.3d 818, 823

7    (9th Cir. 2003).

8          The Ninth Circuit has alternatively described the standard for an actual conflict resulting in

9    an adverse effect as follows: has counsel been "'influenced in his basic strategic decisions' by the

10   conflict"?  *Hovey*, 458 F.3d at 908; *see also United States v. Shwayder*, 312 F.3d 1109, 1118 (9th

11   Cir. 2002) (stating that "[t]he showing must be that 'counsel was influenced in his basic strategic

12   decisions by the interests [of the former client],' as where the conflict 'prevents an attorney . . .

13   from arguing the relative involvement and culpability of his clients in order to minimize the

14   culpability of one by emphasizing the other'"); *Rodrigues*, 347 F.3d at 824 (asking whether the

15   "attorney's relationship to a third part influenced the attorney not to pursue a particular litigation

16   strategy").

17         In the instant case, Mr. Wise's *Cuyler* argument lacks merit.  According to Mr. Wise, the

18   conflict of interest influenced Mr. Wolf's decisions because, in the absence of the conflict, he

19   would not have pressured Mr. Wise to plead.  Mr. Wise also contends that Mr. Wolf would have

20   more aggressively represented him and/or given him better representation but for the alleged

21   conflict.  But Mr. Wise glosses over the issue of whether there was actually a conflict of interest in

22   the first place.[6]

23         The claimed conflict was Mr. Wolf's representation of another individual whom Ms.

24

25   ───────────────

26   [6] In its papers, the government also argues that, even if there were an actual conflict, any claimed
     adverse effect on Mr. Wolf's performance is insufficiently pled.  *See, e.g.*, Reply at 10 *et seq.*
27   (arguing that there are no allegations to support the theory that Mr. Wolf pressured Mr. Wise to
     plead; also arguing that there are no allegations identifying with specificity what litigation strategy
28   was abandoned because of the conflict).  The government further argues that there was no viable
     alternative strategy before Mr. Wise.  *See, e.g.*, Reply at 13 *et seq.*  For the reasons discussed
     *infra*, the Court need not reach those arguments.

8

United States District Court
For the Northern District of California

Brown was interested in interviewing "concerning an investigation that was *unrelated* to Mr. Wise." Hutchison Decl. ¶ 3 (emphasis added). If the other matter was not related in any way to Mr. Wise's case – and there is nothing to suggest to the contrary – then it is difficult to find a logical basis to find a conflict of interest, *i.e.*, divided loyalties. *See Quinones v. Miller*, No. 01 Civ. 10752 (WHP) (AJP), 2003 U.S. Dist. LEXIS 9176, at *107 (S.D.N.Y. June 3, 2003) (in assessing whether there was an actual conflict of interest, considering whether the two cases were substantially related or relevant confidences were shared); *see also* Mot. at 27 (noting that Mr. Wise "cites to no cases where courts found that an ethical conflict existed because a defense attorney represented clients in unrelated matters before the same prosecutor").

Mr. Wise protests that Mr. Wolf "agreed to become involved in [Mr. Wise's] case in order to 'curry favor' with [Ms.] Brown for his other clients." Hutchison Decl. ¶ 6. But this amounts to sheer speculation that Mr. Wolf purposefully compromised his representation of Mr. Wise in order to advance his other clients' interests. Nothing in logic or the record supports such a speculative inference.

Notably, Mr. Wise's argument, unsupported by any fact, is troubling because, if accepted it would call into question the ability of a criminal defense attorney to represent two defendants *in unrelated matters* before the same prosecuting agency; an argument could always be made that the defense attorney took action in one case to the defendant's detriment in order to benefit the defendant in the other case. The "workability" of Mr. Wise's position is something fair to consider under Ninth Circuit case law. For example, in *Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995), the Ninth Circuit noted: "The fact that an attorney undertakes the representation of a client because of a desire to profit does not by itself create the type of direct 'actual' conflict of interest required by *Cuyler*." *Id.* at 826.

> If the types of conflicts alleged by Bonin were to be cognizable under *Cuyler*, the rule would become hopelessly unworkable. As human beings, attorneys always have interests of their own independent of those of their clients. Where a direct and significant conflict of interest exists between a defendant and his client, it is reasonable to presume that the defendant has been prejudiced as a result. However, minor or potential conflicts of interest often exist which might theoretically or conceivably affect an attorney's representation, but are not likely to do so. Such "potential" conflicts

> are insufficient under *Cuyler*. In the absence of an "actual" conflict which squarely places the interests of the client in opposition to those of the attorney, and is likely to compromise a reasonable attorney's ability to comply with his legal and ethical obligation to represent his client with undivided loyalty, the *Cuyler* standard cannot be met. If a mere "potential" or "theoretical" conflict does affect an attorney's representation in a particular case, the defendant is not without recourse. However, he cannot rely on *Cuyler* and obtain relief merely upon a showing of "adverse effect," but must instead make the showing required by *Strickland* [*v. Washington*] that counsel's performance was objectively unreasonable and that he suffered prejudice as a result.

*Id.* at 827.

Finally, the Court notes that, similar to above, Mr. Wise has asked for discovery to explore the claimed conflict of interest on the part of Mr. Wolf. But here there is no good cause for discovery given that there is nothing to indicate that Mr. Wolf's representation of the other client was in any way related to Mr. Wise's case.

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL –
## DEFICIENT PERFORMANCE

In addition to the conflict-based ineffective assistance claims, Mr. Wise has brought more traditional ineffective assistance claims – more specifically, that his counsel, Mr. Wolf, provided deficient performance that was prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (noting that a claim for ineffective assistance of counsel has two components: (1) "the defendant must show that counsel's performance was deficient" and (2) the defendant must show that the deficient performance prejudiced the defense"). In assessing these claims, the Court should bear in mind that

> [a] district court must grant a federal habeas petitioner's motion for an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Although section 2255 imposes a fairly lenient burden on the petitioner, the petitioner is nonetheless "required to allege specific facts which, if true, would entitle him to relief."

*Rodrigues*, 347 F.3d at 824. The relevant background for Mr. Wise's traditional ineffective assistance claims is provided below.

A.   Relevant Background

The relevant background for Mr. Wise's traditional ineffective assistance claims (based on

United States District Court
For the Northern District of California

the record submitted) is as follows.

- In February 2012, the government filed an indictment against Mr. Wise, charging him with, *inter alia*, mail and wire fraud, money laundering, and so forth. *See* Pet., Ex. 1 (indictment).

- On February 29, 2012, Mr. Wise learned of the indictment. *See* Wise Decl. ¶ 3. At the time, Mr. Wise was in Canada. (He is a Canadian citizen. *See* Mot. at 6.) He hired a Canadian attorney (Daniel Brown) to negotiate an agreement with the government "whereby [he] would voluntarily travel to San Francisco and surrender to U.S. authorities in exchange for an agreement that after I was sentenced I would be able to transfer back to Canada." Wise Decl. ¶ 4. Mr. Wise does not dispute that a transfer back to Canada was significant not only because it is home but also because, there, he would be eligible for parole. *See* Mot. at 6 (explaining that, "unlike the United States, Canada has a parole system for its federal prisoners"). Ultimately, Mr. Wise "agreed to self-surrender to U.S. authorities in San Francisco in exchange for the U.S. Attorney's promise and agreement that *if [he] pled* and was sentenced to prison in the United States [he] would be allowed to apply to transfer to Canada after [he] had served the longer of 54 months or 1/3 of my sentence, and the U.S. Attorney's Office would not . . . oppose my application to transfer and serve the remainder of my sentence in Canada." Wise Decl. ¶ 7 (emphasis added). As indicated by Mr. Wise's declaration, to get the benefit of the transfer back to Canada, he had to plead out.

- In March 2012, Mr. Wise learned that Mr. Wolf had been appointed to represent him. *See* Wise Decl. ¶ 5.

- On April 16, 2012, Mr. Wise surrendered to U.S. authorities. *See* Wise Decl. ¶ 8. When Mr. Wise arrived in the United States, he intended to cooperate in the investigation of his co-defendant, Jacquline Hoegel (an "underling" in the fraud scheme), and in the recovery of funds for victims of the fraud – more specifically, so that he would get a reduced sentence. *See* Wise Decl. ¶ 15.

11

**United States District Court**
For the Northern District of California

- Shortly after Mr. Wise surrendered to the U.S. authorities, he began to be interviewed by the government. More specifically, between late April 2012 and July/August 2012, he was interviewed three times. *See* Wise Decl. ¶ 20; *see also* Pet., Ex. 43 (Gov't's Sentencing Memo. at 2) (noting that two lengthy interviews were conducted on April 26, 2012, and May 21, 2012). Mr. Wolf did not prepare Mr. Wise for these interviews. For example, although Mr. Wise met with Mr. Wolf before his first interview in late April 2012, Mr. Wolf simply counseled Mr. Wise that he should tell the truth. The two "did not discuss details of [Mr. Wise's] case, possible defenses [he] might have, or the risks and potential outcomes if [he] cooperated and pled instead of exercising [his] right to a trial." Wise Decl. ¶ 21.

- Leading up to the plea hearing in September 2012, Mr. Wise had limited contact with Mr. Wolf. Mr. Wolf either did not show up to meetings or would send a junior attorney instead who could not properly give advice or answer questions. *See* Wise Decl. ¶ 26.

- Before the plea agreement was signed, Mr. Wise met with Ms. Brown (the AUSA) two times because he still had questions about the plea agreement. One meeting was on September 6, 2012, and the other on September 12, 2012 (*i.e.*, the day the plea agreement was actually signed). *See* Wise Decl. ¶¶ 27-29.

Against this background, Mr. Wise makes two arguments as to why Mr. Wolf provided ineffective assistance.

- First, Mr. Wise claims ineffective assistance on the ground that Mr. Wolf failed to conduct adequate discovery and/or an investigation (a) before Mr. Wise was first interviewed by the government in April 2012 (*i.e.*, approximately ten days after he surrendered), and (b) for several months thereafter, more specifically, before Mr. Wise ultimately signed the plea agreement in September 2012. *See* Pet. at 3.

- Second, Mr. Wise contends that Mr. Wolf's performance was deficient because (a) he failed to adequately advise Mr. Wise about the risk that the government might not make a substantial assistance (*i.e.*, 5K) motion and/or that the Court could

12

1     ignore such a motion and (b) he failed to insist on a Rule 11(c)(1)(C) plea which

2     would protect against the government reneging on a promise to file a 5K motion.

3           These two subtheories are intimately intertwined and should be dealt with together.

4  B.     Failure to Conduct Adequate Discovery and/or an Investigation

5           As noted above, Mr. Wise's first theory of ineffective assistance is that Mr. Wolf failed to

6  conduct adequate discovery and/or an investigation.  Mr. Wise argues that Mr. Wolf did not do

7  *any* discovery or investigation before Mr. Wise was first interviewed by the government.  (Mr.

8  Wolf surrendered to U.S. authorities in mid-April 2012; he was interviewed the first time ten days

9  thereafter.)  Mr. Wise further argues that Mr. Wolf did not conduct sufficient discovery or

10  investigation before Mr. Wise ultimately signed the plea agreement in September 2012.

11  According to Mr. Wise, these acts or omissions by Mr. Wolf are particularly problematic because,

12  as Mr. Wolf conceded at a pre-sentencing hearing in September 2014, there was "a huge room of

13  discovery" in Mr. Wise's case, but "there's never been a significant review on his behalf of that

14  discovery."[7]  Pet., Ex. 41 (Tr. at 6).

15           The government argues that there was no deficient performance by Mr. Wolf because Mr.

16  Wise had already decided he was going to plead out and cooperate in order to get a reduced

17  sentence – which then affected Mr. Wolf's options as to what discovery or investigation actually

18  needed to be done (*i.e.*, little).  The government cites *Burger v. Kemp*, 483 U.S. 776 (1987), in

19  support.  There, the Supreme Court stated as follows:

20           "The reasonableness of counsel's actions may be determined or
         substantially influenced by the defendant's own statements or
21           actions.  Counsel's actions are usually based, quite properly, on
         informed strategic choices made by the defendant and on
22           information supplied by the defendant.  In particular, what
         investigation decisions are reasonable depends critically on such
23           information.  For example, when the facts that support a certain
         potential line of defense are generally known to counsel because of
24           what the defendant has said, the need for further investigation may
         be considerably diminished or eliminated altogether.  And when a
25           defendant has given counsel reason to believe that pursuing certain
         investigations would be fruitless or even harmful, counsel's failure

26

27  _____

28  [7] Mr. Wolf indicated that the review had not been done because "it wasn't necessary, so time
   wasn't wasted."  Pet., Ex. 41 (Tr. at 6).

13

**United States District Court**
For the Northern District of California

to pursue those investigations may not later be challenged as unreasonable."

*Id.* at 795.

While the government's position is not without some merit (*e.g.*, it is plausible that Mr. Wise did intend to plead out because his surrender agreement was that he would get the transfer back to Canada only if he pleaded out and was sentenced thereafter), it is also problematic. For example, *Burger* states that counsel's actions are usually based on *informed* strategic choices made by the defendant. Therefore, even if Mr. Wise wanted to plead out and cooperate, arguably, Mr. Wolf should have done at least some investigation to make sure that that was an informed choice by Mr. Wise before allowing him to be interviewed by the government.[8] Moreover, Mr. Wise makes a fair argument that, even if he wanted to plead out and cooperate initially, he later had misgivings as the time for him to sign the plea agreement drew near. That Mr. Wise had misgivings is evidenced by the fact that he asked to meet Ms. Brown two times before the plea agreement was signed. The government suggests that Mr. Wise's misgivings were limited because, apparently, Mr. Wolf told Mr. Wise's current counsel that Mr. Wise's concerns about the plea agreement did not have anything to do with its substance but rather its language; also, "he wanted to beat the 54 month period in the transfer agreement."[9] Hutchison Decl. ¶ 20. But in his declaration, Mr. Wise also states that he was "reluctant to plead to *all* of the charges." Wise Decl. ¶ 30 (emphasis added; adding that he was told by Mr. Wolf and Ms. Brown that pleading to all counts was "necessary so that it would not look like I was getting a deal"). Furthermore, the terms of the plea were presumably subject to negotiation. Preparing a client for any debriefing or discussions with the government would be an expected part of representation in the context of plea

---

[8] The government contends that Mr. Wise had an incentive to start his cooperation immediately – *i.e.*, to make sure that he provided cooperation before Ms. Hoegel could, *e.g.*, plead out. While this is a fair argument, that still does not foreclose Mr. Wise's point that the initial interview could have been delayed somewhat rather than having the interview take place almost immediately after his surrender to U.S. authorities.

[9] As noted above, Mr. Wise "agreed to self-surrender to U.S. authorities in San Francisco in exchange for the U.S. Attorney's promise and agreement that if [he] pled and was sentenced to prison in the United States [he] would be allowed to apply to transfer to Canada after [he] had served the longer of 54 months or 1/3 of my sentence, and the U.S. Attorney's Office would not . . . oppose my application to transfer and serve the remainder of my sentence in Canada." Wise Decl. ¶ 7. The actual terms of any plea agreement had not been reached.

negotiations.  *See Torres v. Lopez*, No. CV 10-3537-JLS (SP), 2014 U.S. Dist. LEXIS 177430, at *36-37 (C.D. Cal. Sep. 17, 2014) (stating that "[p]lea negotiations are a 'critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel'") (citing *Padilla v. Ky.*, 559 U.S. 356, 374 (2010)).

Because Mr. Wise states a plausible claim of deficient representation by Mr. Wolf, the Court should grant Mr. Wise's request for an evidentiary hearing, *see* 28 U.S.C. § 2255(b) (providing that, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto"), unless it determines that there was no prejudice as a result of the ineffective assistance of counsel.

In the context of guilty pleas, the prejudice prong of *Strickland* requires a petitioner to show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  That is, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

The government's position that there is no prejudice is not without support.  For example, as noted above, it is plausible that Mr. Wise would not have insisted on going to trial because his agreement with the government on being transferred back to Canada was dependent on his pleading out and being sentenced.  Furthermore, Mr. Wise's conclusory statement in his declaration that he would not have signed the plea agreement but for Mr. Wolf's deficient performance, *see* Wolf Decl. ¶ 51, alone is not enough to warrant relief.  *See United States v. Rivers*, No. 14-15338, 2016 U.S. App. LEXIS 13458, at *13 (11th Cir. July 25, 2016) (stating that "[a] conclusory allegation of prejudice is not sufficient[;] [i]nstead, the defendant must allege specific facts suggesting that he would not have decided to plead guilty but for his attorney's alleged errors or omissions"); *Contant v. Sabol*, 987 F. Supp. 2d 323, 332 (S.D.N.Y. 2013) (indicating that a "'conclusory claim . . . that [the petitioner] would have gone to trial but for counsel's alleged ineffectiveness, standing alone, does not establish prejudice under *Strickland*'");

1  *cf. Rosin v. United States*, 786 F.3d 873, 879 (11th Cir. 2015) (rejecting petitioner's prejudice

2  argument "in the absence of any evidence other than his own conclusory after-the-fact assertion –

3  and given the record evidence contradicting it"); *Anthoulis v. New York*, 586 Fed. Appx. 790, 792

4  (2d Cir. 2014) (stating that, given the circumstances, "a fairminded jurist could reject Anthoulis's

5  conclusory statement that he would have rejected the deal and insisted on going to trial").  Even

6  though Mr. Wise argues that he would have gone to trial rather than plead out because the plea

7  required him to plead guilty to *all* counts, there is no indication that the government did not have

8  sufficient evidence to support all counts.  The record does not suggest that the government was not

9  intent in going to trial on all of counts.  The fact that many of the charges were ultimately dropped

10  against Mr. Wise's co-defendant (Ms. Hoegel) is far from dispositive, particularly given her lesser

11  role in the alleged fraud scheme.

12       That being said, as Mr. Wise contends, "there are a myriad of other ways than an

13  attorney's ineffectiveness in plea negotiations can prejudice a defendant that don't involve stark

14  choices between going to trial or accepting an incompetently negotiated plea agreement."  Opp'n

15  at 33.  In *Missouri v. Frye*, 132 S. Ct. 1399 (2012), the Supreme Court noted:

16           *Hill* does not . . . provide the sole means for demonstrating prejudice
            arising from the deficient performance of counsel during plea
17           negotiations.  Unlike the defendant in *Hill*, Frye argues that with
            effective assistance he would have accepted an earlier plea offer
18           (limiting his sentence to one year in prison) as opposed to entering
            an open plea (exposing him to a maximum sentence of four years'
19           imprisonment).  In a case, such as this, where a defendant pleads
            guilty to less favorable terms and claims that ineffective assistance
20           caused him to miss out on a more favorable earlier plea offer,
            *Strickland*'s inquiry into whether "the result of the proceeding
21           would have been different" requires looking not at whether the
            defendant would have proceeded to trial absent ineffective
22           assistance but whether he would have accepted the offer to plead
            pursuant to the terms earlier proposed.
23

24  *Id.* at 1409-10.  Here, Mr. Wise contends that but for Mr. Wolf's ineffective assistance, he would

25  have been able to negotiate a Rule 11(c)(1)(C) deal that would have assured a more favorable

26  sentence than he actually received.  Because this position overlaps with Mr. Wise's second

27  ineffective assistance claim, the issue is addressed below.

28

16

C.    Failure Related to 5K Motion

Mr. Wise asserts ineffective assistance of counsel because Mr. Wolf failed to advise him properly about the risk that the government might not make a 5K motion[10] or that the Court could effectively ignore such a motion and because Mr. Wolf failed to insist on a Rule 11(c)(1)(C) plea to protect against the government from reneging on a promise to make a 5K motion.[11]  Mr. Wise

---

[10] Chapter 5K of the Sentencing Guidelines addresses sentencing departures.  U.S.S.G. § 5K1.1 provides as follows:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

> (a)    The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

> > (1)    the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

> > (2)    the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

> > (3)    the nature and extent of the defendant's assistance;

> > (4)    any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

> > (5)    the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1.

[11] Under Federal Rule of Criminal Procedure 11(c)(1)(C), a

> plea agreement may specify that an attorney for the government will . . .

> > (C)    agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement.

Fed. R. Crim. P. 11(c)(1)(C).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  underscores that Mr. Wolf admitted at one of the hearings before the Court (in May 2014) that he

2  had de minimis experience with 5K motions, *see* Pet., Ex. 36 (Tr. at 7[12]), which is particularly

3  problematic given that Mr. Wise's primary interest was to persuade the government to file such a

4  motion.  *See* Pet. at 14.

5          Similar to above, Mr. Wise has a fair argument for deficient performance.  As an initial

6  matter, it is not clear from the record whether Mr. Wolf discussed a Rule 11(c)(1)(C) plea

7  agreement with Mr. Wise in the first place.  If not, that might be problematic given that Mr. Wise

8  was otherwise banking on cooperation with the government and the Court's recognition of that to

9  get a reduced sentence.  It is also not clear whether Mr. Wolf discussed the possibility of a Rule

10  11(c)(1)(C) plea deal with Ms. Brown.  Again, if not, that would be troubling.

11          The government argues that it is implausible that the government would have offered a

12  Rule 11(c)(1)(C) plea agreement with a sentence amenable to Mr. Wise:

13

14  _____

       In contrast, Rule 11(c)(1)(B) provides that a plea agreement may specify that a government
15  attorney will

16          (B)     recommend, or agree not to oppose the defendant's request,
                    that a particular sentence or sentencing range is appropriate
17                  or that a particular provision of the Sentencing Guidelines, or
                    policy statement, or sentencing factor does or does not apply
18                  (such a recommendation or request does *not* bind the court) .
                    . . .

19  Fed. R. Crim. P. 11(c)(1)(B) (emphasis added).

20  [12] At a Court hearing in May 2014, Mr. Wolf stated:

21
                You know that I have been a criminal defense lawyer in the federal
22              courts for a long time, but my experience with 5Ks is diminimus
                [sic].  It's not just something I've done a lot.
23
                I was requested to take this case because of the nature of it and
24              agreed to do so.  I think they went off the list of the panel and had
                me do that.
25
                I'm not sure I'm the right lawyer for this case because of that and,
26              perhaps, just because of the lack of communication and trust Mr.
                Wise has.
27
    Pet., Ex. 36 (Tr. at 7); *see also* Pet., Ex. 36 (Tr. at 8) (Mr. Wolf stating that "maybe [Mr. Wise]
28  would be better suited to have someone who has more experience, maybe an ex-U.S. Attorney or
    someone who has – just has more experience in 5K deals, particularly in white collar cases").

> A C plea would . . . have required defendant to accept a floor on his sentence – instead of being able to ask for, and receive, any sentence.  The allegations demonstrate [Mr. Wise] would have never accepted that.  According to Attorney Wolf, defendant wanted to "beat" the 54 month transfer provision in the plea agreement [*i.e.*, the transfer to Canada] by receiving a sentence less than three times longer than 54 months.  This indicates that . . . he was hoping for a sentence of less than 162 months [*i.e.*, 54 x 3] – 100 months and approximately 40% below the low end of the Guidelines [*i.e.*, 262 months].

> Defendant has not alleged that such a C plea was possible, and even if he had made such an allegation, it would be patently frivolous.  Defendant was pleading to what was among the largest (and probably the largest) financial crimes in Northern District history . . . .

Mot. at 37.

But it is not clear what "floor" (*i.e.*, minimum sentence) the government would have demanded for a Rule 11(c)(1)(C) agreement and whether Mr. Wise might have been amenable to that floor.  While the government contends that Mr. Wise "wanted to 'beat' the 54 month transfer provision in the plea agreement," the actual plea agreement did not allow for Mr. Wise to serve fewer than 54 months prior to transfer to Canada.  Under the plea agreement, Mr. Wise had to serve the *longer* of 54 months or 1/3 of his sentence.  *See* Pet., Ex. 52 (Plea Agmt. ¶ 12) ("I further agree that I will not apply for a transfer to serve part of my sentence in Canada until I have served at least 1/3 of my sentence or 54 months in the United States . . . , whichever is longer.").  While that provision still gave Mr. Wise an additional incentive to get as short a sentence as possible, it does *not* mean that he would necessarily have rejected any sentence above 162 months (*i.e.*, 54 x 3).  Both his understanding in agreeing to return to the U.S. to face charges and his plea agreement implicitly contemplated he could be sentenced to more than 162 months, since Mr. Wise agreed to serve the *longer* of 54 months or one-third (1/3) of his sentence.  The question is whether, with more effective representation, Mr. Wise would have gotten a better plea deal, either with or without a 5K.  As the government has not shown a better plea was impossible, an evidentiary hearing is warranted.

D.     Summary

For the foregoing reasons, the Court concludes that an evidentiary hearing is warranted on both of Mr. Wise's claims of *Strickland* ineffective assistance of counsel.  In so holding, the Court

**United States District Court**
For the Northern District of California

takes into account that, in or about May 2014, it appointed Martha A. Boersch as advisory counsel to consult with Mr. Wise about the plea agreement he had signed back in September 2012, including "whether there is any potential relief that he should explore from the plea agreement." Docket No. 176 (Tr. at 21); *see also* Pet., Ex. 52 (Plea Agreement ¶ 5) (plea agreement, allowing Mr. Wise to file a § 2255 petition only on the ground his trial "counsel was ineffective in connection with the negotiation of this Agreement or the entry of my guilty plea").  Given this circumstance, it is entirely possible that Ms. Boersch – whom Mr. Wise has never claimed is ineffective – may have discussed with Mr. Wise the discovery/investigation issue and/or better plea deal issue discussed above.  Had Ms. Boersch done so and still advised Mr. Wise to proceed with the signed plea agreement, then Mr. Wise's claims of ineffective assistance on the part of Mr. Wolf would clearly be troubling.  However, at this juncture, a record must be developed to assess whether Mr. Wise may, in effect, be trying to get a second bite at the apple.  Notably, even the government concedes that "it is impossible on this record to know for certain" whether Ms. Boersch's representation could "undercut [Mr. Wise's] argument that [Mr.] Wolf's representation was incompetent.  Docket No. 194 (Supp. Br. at 4).

The Court further notes that, at the evidentiary hearing, Ms. Boersch may be called upon to testify.  The Court rejects Mr. Wise's assertion that his communications with Ms. Boersch are privileged because he has claimed only ineffective assistance by Mr. Wolf, and not Ms. Boersch.  Mr. Wise has failed to cite to any authority to support his position.  Moreover, Mr. Wise's position is problematic for the reasons identified by the government – *i.e.*, where a criminal defendant is represented by a team of attorneys, the defendant "cannot attack the representation of one of his lawyers while using the attorney-client privilege as a shield against disclosures of communications from his other lawyers."  Docket No. 194 (Supp. Br. at 6); *see also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (en banc) (noting that the attorney-client privilege should not be used "as both a shield and a sword"; "this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials").  In other words, effectiveness of counsel must be measured by the defense team as a whole, not by its units.  *Cf. Lopez-Nieves v. United States*, 917 F.2d 645, 647 (1st Cir. 1990) (in a

case where defendant claimed ineffective assistance by one out of two lawyers representing him, "uphold[ing] the district court's finding that appellant was represented by two attorneys, at least one of whom rendered competent services"; adding that "the presence of a second attorney during the proceedings serious undermines appellant's claim of ineffective assistance of counsel"); *see also United States v. Dunfee*, 821 F.3d 120, 130 (1st Cir. 2016) (stating that, where a "defendant [is] represented by multiple attorneys, an ineffective assistance challenge is particularly difficult to mount").  Here, even though Ms. Boersch was evaluating what to do about the plea agreement negotiated by Mr. Wolf and potential ineffectiveness on the part of Mr. Wolf, that still does not mean that she and Mr. Boersch were not, for all practical purposes, part of the same defense team.

## V.    **BREACH OF PLEA AGREEMENT**

Finally, Mr. Wise has challenged his sentence on the basis that the government breached the plea agreement that he signed.  More specifically, Mr. Wise contends that, pursuant to the plea agreement, the government promised to file a 5K motion based on the cooperation that he had already provided to it, and the government breached that promise by not filing such a motion and submitting evidence that would, if anything, prejudice the Court against him (*e.g.*, pictures of Mr. Wise hobnobbing with his girlfriends).

A.    Relevant Background

The relevant background for this contention is as follows:

- In July 2012, Ms. Brown sent to Mr. Wolf the first draft of the plea agreement.  *See* Pet., Ex. 11 (e-mail).

- In August 2012, as the plea agreement was being negotiated, Ms. Brown sent an e-mail to Mr. Wolf in which she stated, *inter alia*, "I can't promise the extent of his 5K, but based on what he's done so far (and assuming he doesn't screw up in the future), I think you can feel confident he will get a 5K recommendation from me. And the extent of the 5K departure is up to Chen anyway.  I think we can both guess at what Chen is likely to do at sentencing with this guy, and I'm going to go out on a limb and say Wise is not getting 262-327."  Pet., Ex. 12 (e-mail).  (Mr. Wise was eventually sentenced to 262 months.)

**United States District Court**
For the Northern District of California

- Before Mr. Wolf signed the plea agreement on September 12, 2012, he had two meetings with Ms. Brown.

- At the first meeting, on September 6, 2012, Ms. Brown "assured [Mr. Wise] she was satisfied with his cooperation and assistance, and that she would file a 5K1.1 motion and/or otherwise urge the Court to give me a reduced sentence." Wise Decl. ¶ 27.

- At the second meeting, which took place immediately before Mr. Wise pled guilty before the Court on September 12, 2012, Ms. Brown told Mr. Wise that he "would get a downward departure from the guidelines. [He] asked [Ms.] Brown directly, 'I'm not getting like twenty years?' She replied, 'No, nowhere near that.' [He] asked her again, directly, 'So, I'm not getting like twenty years?' She replied, 'No,' adding that because [he] was meeting the 'gold standard' of witness cooperation things would go well for [him]." Wise Decl. ¶ 29.

- The plea agreement that Mr. Wise ultimately signed contained the following provisions regarding 5K motions:

    11.    I agree that the government's decision whether to file a motion pursuant to U.S.S.G. § 5K1.1, as described in the government promises section below, is based on its sole and exclusive decision of whether I have provided substantial assistance and that  decision will be binding on me. I understand that the government's decision whether to file such a motion, or the extent of the departure recommended by any motion, will not depend on whether convictions are obtained in any case. I also understand that the Court will not be bound by any recommendation made by the government.

    . . . .

    20.    If, in its sole and exclusive judgment, the government decides that the defendant has cooperated fully and truthfully, provided substantial assistance to law enforcement authorities within the meaning of U.S.S.G. § 5K1.1, and otherwise complied fully with this Agreement, it will file with the Court a motion under § 5K1.1 and/or 18 U.S.C. § 3553 that explains the nature and extent of the defendant's cooperation and recommends a downward departure.

Pet., Ex. 52 (Plea Agmt. ¶¶ 11, 20).

**United States District Court**
For the Northern District of California

- The plea agreement also contains the following provision: "I agree that this Agreement contains all of the promises and agreements between the government and me, and supersedes any other agreements, written or oral.  No modification of this Agreement shall be effective unless it is in writing and signed by all parties." Pet., Ex. 52 (Plea Agmt. ¶ 14).

- On January 28, 2015 (*i.e.*, a week before the sentencing hearing on February 4, 2015, *see* Pet., Ex. 48 (sentencing hearing transcript)), the government filed its sentencing memorandum, in which it stated that it was not making a 5K motion. The government explained the reasoning behind this decision as follows: (1) Mr. Wise and his co-defendant, Ms. Hoegel, were both indicted on February 21, 2012; (2) Mr. Wise was interviewed after his surrender to U.S. authorities on April 26, 2012, and May 21, 2012; (3) these interviews "did not substantially assist in the prosecution of [Ms.] Hoegel or anyone else."  Pet., Ex. 43 (Gov't's Sentencing Memo. at 2); *see also* Pet., Ex. 45 (Gov't's Resp. Br. at 2) (asserting that "the absence of substantial assistance in the investigation and prosecution of another person is self evident[:] [Ms.] Hoegel and defendant were indicted at the same time; defendant then began cooperating with the government; charges were later dismissed against [Ms.] Hoegel; and no one else has ever been indicted as a result of defendant's cooperation").

- Prior to sentencing, the government also offered for the Court's consideration at pictures of, *e.g.*, Mr. Wise hobnobbing with girlfriends.

B.   <u>Waiver</u>

As a preliminary matter, the Court notes that in its motion, the government first argued for dismissal of this claim on the ground that Mr. Wise waived his right to bring a § 2255 motion based on breach of the plea agreement.  The government pointed to the following provision in the plea agreement:

> I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, or motion under 18 U.S.C. § 3582, at any time in the future after I am

23

1

> sentenced, except that I reserve my right to claim that my counsel
> was ineffective in connection with the negotiation of this Agreement
> or the entry of my guilty plea.

2

3    Pet., Ex. 52 (Plea Agmt. ¶ 5).  In its reply brief, however, the government conceded that its waiver

4    argument was flawed – that is, Mr. Wise was "correct that, if he can establish a breach of the plea

5    agreement, his waiver of his right to file a § 2255 petition is likely not binding on him."  Reply at

6    17; *see also United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) (stating that "[a]n appeal

7    waiver will not apply if . . . the sentence does not comport with the terms of the plea agreement");

8    *United States v. Buissereth*, 638 F.3d 114, 118 (2d Cir. 2011) (stating that "[a]n appeal waiver . . .

9    does have some limits" – *e.g.*, "'[a] defendant may have a valid claim that the waiver of appellate

10   rights is unenforceable . . . when the government breached the plea agreement'").

11   C.      Procedural Default

12            Although the government essentially gives up its waiver argument, it contends that there is

13   still another procedural ground to dismiss Mr. Wise's claim – *i.e.*, the he failed to raise the breach

14   claim at trial and therefore cannot collaterally attack his sentence unless there is cause and

15   prejudice for the procedural default.  *See Frady*, 456 U.S. at 167-68 (stating that "to obtain

16   collateral relief based on trial errors to which no contemporaneous objection was made, a

17   convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2)

18   'actual prejudice' resulting from the errors of which he complains").

19            The government argues that cause is lacking because, in his declaration, Mr. Wise admits

20   that, a month or two before the sentencing hearing, he learned that the government "*might* not be

21   filing a motion under U.S.S.G. section 5K1.1."  Wise Decl. ¶ 46 (emphasis in original).  Thus,

22   according to the government, Mr. Wise

23

> had all the information necessary to raise a breach claim at the time
> the government filed its sentencing memorandum, eight days before

24

> his sentencing.  Defendant nonetheless proceeded to sentencing,
> where both in his sentencing memorandum and at sentencing itself,

25

> he attacked the government for not filing a § 5K1.1 motion but
> never raised the issue of breach or asked to withdraw his plea.  He

26

> plainly did so because he determined that, had he withdrawn from
> his plea agreement prior to sentencing, he would have lost the

27

> benefit of any cooperation and would have lost his Canadian transfer
> provision.

28

United States District Court
For the Northern District of California

1    Reply at 18.

2           In response, Mr. Wise contends that there is cause for his procedural default because he

3    was effectively barred from raising a claim of breach of the plea agreement at the sentencing

4    hearing – *i.e.*, the Court refused to hold an evidentiary hearing, as requested (*see* Pet., Ex. 44

5    (Def.'s Sentencing Memo. at 1), on whether the government acted in bad faith in failing to file a

6    5K motion.  *See* Pet., Ex. 48 (Tr. at 49-50) (Court stating that "I'm not going to review the refusal

7    to bring a 5K1.1 motion, because I think it entails serious separation of powers questions, it

8    involves this Court delv[ing] into the prosecutorial discretion that is generally immune from

9    judicial review, except for very narrow circumstances, but one compelling situation here is that

10   there is an ongoing prosecution[,] [a]nd for the Court to try to intervene and discern the basis for

11   any decision with respect to 5K1.1 or the reason to dismiss Ms. Hoegel in this case and not utilize

12   5K1.1 cooperation would implicate this Court in the middle of a current ongoing prosecution"").

13   Mr. Wise also argues that he could not raise the claim on appeal because the "claim is based on

14   evidence that was not in the record."  Opp'n at 39.

15          Mr. Wise's position is not without any basis.  The Ninth Circuit has expressed some

16   question as to whether the cause-and-prejudice requirement even "applies to claims government

17   breach of an executed plea agreement" in the first place.  *United States v. De La Fuente*, 8 F.3d

18   1333, 1337 (9th Cir. 1993).[13]

19          But, in any event, even if there were no procedural bar, Mr. Wise's argument on the merits

20   on this claim is without merit.

21   D.     Merits of Breach Claim

22          The thrust of Ms. Wise's breach claim is that the government promised him it would file a

23   5K motion based on the cooperation he had already provided (post-indictment) unless he failed to

24   _____

25   [13] Most other circuits seem to disagree.  *See, e.g.*, *Elzy v. United States*, 205 F.3d 882, 885 (6th
     Cir. 2000) (stating that, "[i]n our view, the Ninth Circuit had absolutely no basis for its claim that

26   *Frady* [*i.e.*, the cause-and-prejudice requirement] may not apply to claims such as the one in *De la
     Fuente*"); *see also United States v. Snider*, 504 Fed. Appx. 674, 677 (10th Cir. 2012) (holding that

27   petitioner had to show cause and prejudice for his failure to present on direct appeal the claim that
     the government breached the plea agreement); *United States v. Rodgers*, 101 F.3d 247, 252-53 (2d

28   Cir. 1996) (evaluating claim for governmental misconduct based on breach of plea agreement
     under the cause-and-prejudice standard).

United States District Court

For the Northern District of California

fulfill his duty.  The government breached that promise by not filing a 5K motion and further worked against that promise by submitting inflammatory evidence against Mr. Wise such as pictures of him and his girlfriends.  In support of this claim, Mr. Wolf relies on statements made by Ms. Brown prior to his signing of the plea agreement – in particular, her statement in an e-mail that "I can't promise the extent of his 5K, but based on what he's done so far (and assuming he doesn't screw up in the future), I think you can feel confident he will get a 5K recommendation from me."  Pet., Ex. 12 (e-mail).

However, Ms. Brown's statements to Mr. Wise prior to his signing the plea agreement cannot form the basis of a breach of contract claim.  The terms of the plea agreement are controlling; the plea agreement contains the following provision: "I agree that this Agreement contains all of the promises and agreements between the government and me, and *supersedes any other agreements, written or oral*.  No modification of this Agreement shall be effective unless it is in writing and signed by all parties."  Pet., Ex. 52 (Plea Agmt. ¶ 14) (emphasis added).  Mr. Wise confirmed this provision during the plea colloquy:  Mr. Wise, in response to the question, "Have any promises been made to you other than what is in the agreement?," stated "None."  Pet., Ex. 22 (Tr. at 10).

As to what the plea agreement says about 5K motions, the following provisions make express reference to U.S.S.G. § 5K1.1:

> 11.   I agree that the government's decision whether to file a motion pursuant to U.S.S.G. § 5K1.1, as described in the government promises section below, is based on its *sole and exclusive decision* of whether I have provided substantial assistance and that  decision will be binding on me.  I understand that the government's decision whether to file such a motion, or the extent of the departure recommended by any motion, will not depend on whether convictions are obtained in any case.  I also understand that the Court will not be bound by any recommendation made by the government.

> . . . .

> 20.   *If*, in its sole and exclusive judgment, *the government decides* that the defendant has cooperated fully and truthfully, provided substantial assistance to law enforcement authorities within the meaning of U.S.S.G. § 5K1.1, and otherwise complied fully with this Agreement, it will file

26

1

> with the Court a motion under § 5K1.1 and/or 18 U.S.C. § 3553 that explains the nature and extent of the defendant's cooperation and recommends a downward departure.

2

3  Pet., Ex. 52 (Plea Agmt. ¶¶ 11, 20) (emphasis added).

4         Mr. Wise takes the position that the above plea agreement language is consistent with what

5  Ms. Brown told him – *i.e.*, that government *would* file motion based on assistance *already*

6  *provided* unless he failed to perform.  However, as the government asserts, the express terms of

7  the plea agreement is to the contrary, stating that the government will file a 5K motion *if it so*

8  *decides*; this language makes clear that the government had not committed to anything.  And Mr.

9  Wise confirmed in his plea colloquy that no promises had been made to him.  The plea agreement

10  and his representation to the Court is unambiguous.  Mr. Wise cannot rely on parol evidence of a

11  secret side agreement to claim breach of contract.  *See, e.g.*, *United States v. Buckley*, 571 Fed.

12  Appx. 472, 476 (7th Cir. 2014) (refusing to consider the prosecutor's statements at the sentencing

13  hearing to clarify agreed-upon sentence; "[o]ur inquiry is limited . . . to the language of the plea

14  agreement [and] parol evidence is not to be considered"); *United States v. Long*, 722 F.3d 257,

15  262 (5th Cir. 2013) (stating that a "court applies general principles of contract law in interpreting

16  the terms of a plea agreement" and that "'parol evidence is inadmissible to prove the meaning of

17  an unambiguous plea agreement'"); *Gray v. Runnels*, 441 Fed. Appx. 420, 421 (9th Cir. 2011)

18  (indicating that "an unambiguous oral agreement may not be contradicted by parol evidence");

19  *United States v. Ajugwo*, 82 F.3d 925, 928 (9th Cir. 1996) (stating that "'[a] plea agreement is

20  contractual in nature and is subject to contract law standards'" and "'the terms of a clear and

21  unambiguous written contract cannot be changed by parol evidence'".

22                              **VI.   CONCLUSION**

23         For the reasons discussed above, Mr. Wise is entitled to an evidentiary hearing only on his

24  claim of ineffective assistance by Mr. Wolf in connection with the plea.  Accordingly, the

25  government's motion to dismiss is granted in part and denied in part.

26         Within two weeks from the date of this order, the parties shall meet and confer and file a

27  joint statement as to (1) how long the evidentiary hearing is expected to take; (2) what witnesses

28  are expected to testify at the evidentiary hearing; and (3) what documents are expected to be

**United States District Court**
For the Northern District of California

1   submitted as evidence.  The parties shall also meet and confer and consult with Betty P. Lee, the

2   Courtroom Deputy, to determine a date and time for the evidentiary hearing, to take place some

3   time in November.

4

5          **IT IS SO ORDERED**.

6

7   Dated: September 21, 2016

8   _____

9                                              EDWARD M. CHEN
                                               United States District Judge