United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WILLIAM J. WISE,<br><br>　　　　　Defendant. | Case No.  12-cr-00111-EMC-1<br><br>**AMENDED ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS; AND DENYING DEFENDANT'S MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255**<br><br>Docket Nos. 180, 160 |

## I.　　**INTRODUCTION**[1]

In September 2012, Defendant William J. Wise pled guilty to eighteen criminal charges, including charges for mail and wire fraud and money laundering, *see generally* § 2255 Pet., Ex. 22 (plea hearing), based on a Ponzi scheme in which he falsely induced others to invest money with him and/or affiliated entities.  *See generally* Pet., Ex. 1 (indictment).  In February 2015, this Court sentenced Mr. Wise to a period of 262 months.  *See* § 2255 Pet., Ex. 49 (criminal minutes).  In February 2016, Mr. Wise filed a motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255.  *See* Docket No. 160 (§ 2255 petition).  In the motion, Mr. Wise argues he is entitled to relief because his trial counsel was conflicted, because his trial counsel provided ineffective assistance, and because the government breached the plea agreement.  The Court ordered the government to file a response to Mr. Wise's motion.  The government has now filed its response,

---

[1] The Court previously granted in part and denied in part the government's motion to dismiss.  *See* Docket No. 195 (order).  Subsequently, the government moved for reconsideration.  *See* Docket No. 198-1 (motion).  The parties submitted full briefing on the reconsideration motion, and, in his papers, Mr. Wise also submitted arguments regarding portions of the prior order denying his § 2255 petition (*i.e.*, in addition to opposing the government's motion for reconsideration).  The Court has now granted the government's motion to reconsider and, accordingly, issues this amended order in which it grants the government's motion to dismiss in its entirety and denies Mr. Wise's petition for relief pursuant to 28 U.S.C. § 2255.

1   which it characterizes as a motion to dismiss.  This is the motion currently pending before the

2   Court.

3                          II.    **MOTION TO DISMISS V. ANSWER**

4          As a preliminary matter, the Court should take note that, although the government has

5   categorized its filing as a motion to dismiss, the filing is really a combined motion to dismiss and

6   answer.

7          The filing is a motion to dismiss to the extent the government argues for dismissal on

8   procedural grounds (*e.g.*, procedural default and waiver).  However, to the extent the government

9   argues that, based on the petition and the record submitted, Mr. Wise has failed to state a claim for

10  relief, that is more in the nature of an answer given the habeas context.  The Advisory Committee

11  Notes for Rule 4 of the Federal Rules Governing § 2254 Proceedings provide some guidance.[2]

12  The Notes state in relevant part as follows:

13              Rule 4 authorizes the judge to "take such other action as the judge
                deems appropriate [*i.e.*, after the judge does not dismiss the case
14              pursuant to his or her preliminary review]." This is designed to
                afford the judge flexibility in a case where either dismissal or an
15              order to answer may be inappropriate.  For example, the judge may
                want to authorize the respondent *to make a motion to dismiss* based
16              upon information furnished by respondent, which may show that
                petitioner's claims have already been decided on the merits in a
17              federal court; that petitioner has failed to exhaust state remedies;
                that the petitioner is not in custody within the meaning of 28 USC §
18              2254; or that a decision in the matter is pending in state court.  In
                these situations, *a dismissal may be called for on procedural
19              grounds, which may avoid burdening the respondent with the
                necessity of filing an answer on the substantive merits of the
20              petition*. . . .

21  Fed. R. Gov. § 2254 Proceedings, Advisory Committee Notes (emphasis added).  As indicated by

22  the italicized language above, a motion to dismiss is usually based on procedural grounds, one that

23  allows the respondent to avoid filing an answer on the substantive merits of the petition.  In the

24  instant case, the government's motion raises some procedural issues but also delves into the

25  substance of Mr. Wise's petition as well.

26          Of course, that the government has filed a combined motion to dismiss and answer is not a

27  _____

28  [2] Although the instant case is a § 2255 proceeding, not a § 2254 proceeding, that difference is not
    material.  There is a comparable Rule 4 for the Federal Rules Governing § 2255 Proceedings.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

problem from a case management perspective.  The Court can simply construe the motion to dismiss as both a motion to dismiss (on procedural grounds) and an answer and then proceed from there.  The Eastern District of California has taken this approach in some of its prior cases.  *See, e.g.*, *Crim v. Benov*, No. 1:10-cv-01600-OWW-JLT HC, 2011 U.S. Dist. LEXIS 45873, at *9 (E.D. Cal. Apr. 28, 2011) ("[D]enying Respondent's motion to dismiss solely on narrow procedural grounds and then requiring Respondent to file an answer that would, in all likelihood, raise the same issues and rely on the same evidence, would be an inefficient use of the parties' time as well as the Court's resources.  Instead, the Court has the inherent power under the Rules Governing Section 2254 Cases to construe Respondent's motion to dismiss as an answer on the merits and Petitioner's opposition to the motion to dismiss as a traverse.").

### III.    INEFFECTIVE ASSISTANCE OF COUNSEL – CONFLICT OF INTEREST

Mr. Wise's plea agreement allows him to file a § 2255 petition only on the ground his trial "counsel was ineffective in connection with the negotiation of this Agreement or the entry of my guilty plea."  Pet., Ex. 52 (Plea Agreement ¶ 5).  According to Mr. Wise, his trial counsel, Paul Wolf, provided ineffective assistance because he had a conflict of interest.  The Supreme Court has recognized that effective assistance of counsel encompasses a right to conflict-free counsel at critical stages of criminal proceedings.  *See generally Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980).

Mr. Wise's conflict-of-interest claim actually has two components.  First, Mr. Wise argues that his trial counsel, Mr. Wolf, had a conflict of interest based on how he was appointed to be Mr. Wise's attorney.  Second, Mr. Wise argues that Mr. Wolf had a conflict of interest based on his representation of another individual.

The facts underlying the two theories overlap.  Those facts are as follows.  Tracie Brown was the AUSA working on Mr. Wise's case.  She met Mr. Wolf in February 2012 because she was "interested in interviewing [his] client(s) concerning an investigation that was unrelated to Mr.

Wise." Hutchison Decl. ¶ 3.[3]  The client was apparently a retained client.  *See* Hutchison Decl. ¶ 3.  Ms. Brown told Mr. Wise that "he was easy to work with and asked him if he would be interested in another case that she was working on," *i.e.*, the case involving Mr. Wise.  Hutchison Decl. ¶ 4.

Mr. Wolf was ultimately appointed to represent Mr. Wise through the CJA process.  Mr. Wolf does not remember the details as to how he was appointed.  *See* Hutchison Decl. ¶ 7.  The docket sheet for the case simply reflects that Judge Cousins signed off on the appointment in late March 2012.  *See* Docket No. 12 (appointment).  Mr. Wolf "agreed to become involved in [Mr. Wise's] case in order to 'curry favor' with [Ms.] Brown for his other clients."  Hutchison Decl. ¶ 6.

A.     First Conflict-of-Interest Theory

As noted above, Mr. Wise first claims a conflict of interest based on how Mr. Wolf was appointed.

As an initial matter, the government contends that this conflict-of-interest theory is procedurally barred.  *See* Mot. at 25.  The government points out that, in his declaration supporting his § 2255 petition, Mr. Wise states: "At some point after he was appointed, [Mr.] Wolf told me that [Ms.] Brown had asked him to take the case."  Wise Decl. ¶ 13.  The government also notes that, in spite of his knowledge of this fact, Mr. Wise never raised an objection with this Court or on direct appeal.  Because Mr. Wise failed to present the conflict-of-interest argument until now – *i.e.*, on collateral attack – the government asserts that he must establish cause and prejudice.  That is, Mr. Wise must show cause to excuse his procedural default and actual prejudice resulting from the claimed conflict.  *See United States v. Frady*, 456 U.S. 152, 167-68 (1982) (stating that "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains"); *see also United States v. Bagnell*, 259 Fed. Appx. 925, 926 (9th Cir. 2007)

---

[3] Buffy Hutchison is one of Mr. Wise's current attorneys.  She and her co-counsel interviewed Mr. Wolf in January 2016.  *See* Hutchison Decl. ¶ 2.

United States District Court
For the Northern District of California

(articulating *Frady*'s cause-and-prejudice standard).

    1.    <u>Cause</u>

    A petitioner shows cause by demonstrating "that the procedural default is due to an 'objective factor' that is 'external' to the petitioner and that 'cannot be fairly attributed to him.'" *Manning v. Foster*, 224 F.3d 1129, 1133 (9th Cir. 2000); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986).  According to the government, here, Mr. Wise cannot show an external impediment for his procedural default.  But arguably there is cause (although Mr. Wise does not really address this in his papers).  That is, even though Mr. Wise knew that Ms. Brown had suggested Mr. Wolf be appointed to this case, he had no reason to suspect that that was improper because Mr. Wolf, his counsel, never suggested that that was a problem – either during trial or during the appeal period.  (Mr. Wolf represented him during both periods.)  *Cf. Murray v. Carrier*, 477 U.S. 478, 488 (1986) (stating that, "[s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default"); *see also Wilder v. United States*, 806 F.3d 653, 658 (1st Cir. 2015) (noting that "[o]ne way to meet the cause requirement is to show constitutionally ineffective assistance of counsel under *Strickland v. Washington*"); *Nguyen v. Curry*, 736 F.3d 1287, 1294 (9th Cir. 2013) (noting that an attorney's error during an appeal on direct review may provide cause to excuse a procedural default).  *See, e.g.*, *Jamison v. Collins*, 100 F. Supp. 2d 521, 572 (S.D. Ohio 1998) (finding cause for procedural default where attorney would not have raised a claim of ineffective assistance of counsel because it would have required the attorney to identify and argue his own ineffectiveness).

    2.    <u>Prejudice</u>

    Assuming that Mr. Wise gets by the cause prong, then the Court must then move on to the prejudice prong.

    Mr. Wise argues that he does not have to show actual prejudice because he is claiming that the appointment of Mr. Wise (either through the influence of Ms. Brown or Mr. Wolf's petitioning

United States District Court<br>For the Northern District of California

United States District Court
For the Northern District of California

1  for the job to curry favor with Ms. Brown) constitutes structural error, which is per se prejudicial.[4]

2  *See Wilder*, 806 F.3d at 658.

3       Some courts, including the Ninth Circuit, have indicated that a structural error satisfies the

4  actual prejudice requirement.  *See United States v. Withers*, 638 F.3d 1055, 1066 (9th Cir. 2011)

5  (stating that, "because Withers's underlying non-frivolous public trial claim alleges structural

6  error, he can also likely establish prejudice sufficient to overcome procedural default"); *see also*

7  *Owens v. United States*, 483 F.3d 48, 64 (1st Cir. 2007) (stating that, "[i]f the failure to hold a

8  public trial is structural error, and it is impossible to determine whether a structural error is

9  prejudicial, we must then conclude that a defendant who is seeking to excuse a procedurally

10  defaulted claim of structural error need not establish actual prejudice").[5]

11       However, Mr. Wise has failed to establish structural error.  For an error to be

12  structural the question is "whether the error was of sufficient consequence that the criminal

13  process *cannot reliably serve its function* as a vehicle for determination of guilt or innocence."

14  *Peck v. United States*, 106 F.3d 450, 454 (2d Cir. 1997) (emphasis added and internal quotation

15  marks omitted; citing *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)).  Nothing suggests

16  structural error.  The mere fact that Ms. Brown suggested Mr. Wolf's appointment in no way

---

[4] "[A] structural error is one 'affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'"  *Wilder*, 806 F.3d at 658.  The Supreme Court has found only a structural error "in a 'very limited class of cases'" – *e.g.*, the complete denial of counsel, a biased trial judge, racial discrimination in selection of the grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction.  *See Neder v. United States*, 527 U.S. 1, 8 (1999).

[5] Other courts, however, disagree.  *See, e.g.*, *Hunter v. Bergh*, No. 15-2167, 2016 U.S. App. LEXIS 4374, at *5 (6th Cir. Feb. 29, 2016) (taking note of petitioner's contention that "prejudice should have been presumed because the trial court's error was structural," but "this court does not presume prejudice for purposes of procedural default when considering structural error claims"); *Hunt v. Houston*, 563 F.3d 695, 704 n.2 (8th Cir. 2008) (stating that, although petitioner "argues that the alleged constitutional violations in his case resulted in structural error, a finding of structural error does not obviate a petitioner's obligation to show prejudice when attempting to overcome a state procedural default"); *Thornburg v. Mullin*, 422 F.3d 1113, 1141 (10th Cir. 2005) (stating that, "'[w]hile the nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not later the need to make that threshold showing'" and so "even structural errors are subject to state procedural bars"); *Ward v. Hinsley*, 377 F.3d 719, 725-26 (7th Cir. 2004) (noting that "[t]he procedural default doctrine is 'grounded in concerns of comity and federalism'" and "[t]hese concerns are in no way diminished if the federal claim raised before the federal habeas court is one of structural error").

United States District Court
For the Northern District of California

establishes or even reasonably suggests his representation of Mr. Wise would be compromised. Expressing respect for opposing counsel, without more, is innocuous.  Ms. Brown may have suggested that Mr. Wolf be appointed simply because she thought he was a competent attorney who acted professionally and was not unreasonably uncooperative.  *Cf. Black v. Sec'y*, No. 3:08-cv-928-J-12TEM, 2011 U.S. Dist. LEXIS 107684, at *58 (M.D. Fla. Sept. 21, 2011) (stating that "Petitioner's vague and conclusory claim of a sexual relationship between defense counsel and the prosecutor will not justify habeas relief"); *Gonzales v. Rapelje*, No. 06-CV-10191, 2015 U.S. Dist. LEXIS 44524, at *19 (E.D. Mich. Apr. 6, 2015) (stating that "Petitioner does not show that the relationship between [defense counsel and the prosecuting attorney], which resulted when each of their surviving parents married later in life, created a conflict of interest").  To the extent Mr. Wise has argued that he needs discovery into the appointment process, the Court does not agree.  Mr. Wise has failed to show the requisite good cause for discovery; speculation is not enough.  *See* Fed. R. Gov. § 2255 Proceedings, R. 6 (providing that "[a] judge may, for good cause, authorize a party to conduct discovery").

B.     Second Conflict-of-Interest Theory

Mr. Wise's second conflict-of-interest theory is predicated on the fact that (1) when Mr. Wolf first met Ms. Brown, it was because she was "interested in interviewing [his retained] client(s) concerning an investigation that was unrelated to Mr. Wise," Hutchison Decl. ¶ 3, and (2) Mr. Wolf "agreed to become involved in [Mr. Wise's] case in order to 'curry favor' with [Ms.] Brown for his other clients."  Hutchison Decl. ¶ 6.  According to Mr. Wise, Mr. Wolf's "representation of him at the same time he was representing client(s) in other negotiations with [Ms.] Brown created an actual conflict that adversely affected [Mr. Wolf's] representation of [him]."  Pet. at 13.

The parties agree that, in assessing this conflict-of-interest theory, *Cuyler*, 446 U.S. at 335 (a multiple representation case), provides the governing legal standard.  Under *Cuyler*, "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."  *Id.* at 348.  The conflict of interest *must be actual*, not just possible.  *See id.* at 350.  But "a defendant

who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice . . . ."[6]  *Id.* at 349; *see also Mickens v. Taylor*, 535 U.S. 162, 173 (2002) (noting that *Cuyler* "requires proof of effect upon representation but (once such effect is shown) presumes prejudice").

The Ninth Circuit has stated that "[t]o show an actual conflict resulting in an adverse effect, [the petitioner] must demonstrate 'that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."  *Hovey*, 458 F.3d at 908. "'With respect to the substance of the plausible alternative strategy, the defendant need not show that the defense would necessarily have been successful had it been used, only that it possessed sufficient substance to be a viable alternative.'"  *United States v. Rodrigues*, 347 F.3d 818, 823 (9th Cir. 2003).

The Ninth Circuit has alternatively described the standard for an actual conflict resulting in an adverse effect as follows: has counsel been "'influenced in his basic strategic decisions' by the conflict"?  *Hovey*, 458 F.3d at 908; *see also United States v. Shwayder*, 312 F.3d 1109, 1118 (9th Cir. 2002) (stating that "[t]he showing must be that 'counsel was influenced in his basic strategic decisions by the interests [of the former client],' as where the conflict 'prevents an attorney . . . from arguing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing the other'");  *Rodrigues*, 347 F.3d at 824 (asking whether the "attorney's relationship to a third part influenced the attorney not to pursue a particular litigation strategy").

In the instant case, Mr. Wise's *Cuyler* argument lacks merit.  According to Mr. Wise, the conflict of interest influenced Mr. Wolf's decisions because, in the absence of the conflict, he would not have pressured Mr. Wise to plead.  Mr. Wise also contends that Mr. Wolf would have more aggressively represented him and/or given him better representation but for the alleged

---

[6] Note that, if the attorney's actions are the result of neglect and not divided loyalties, a court simply adopts "the traditional inquiry into deficiency and prejudice that is applicable to . . . ineffective assistance claims [*i.e.*, the *Strickland* inquiry]."  *Hovey v. Ayers*, 458 F.3d 892, 909 (9th Cir. 2006).

**United States District Court**
For the Northern District of California

1  conflict.  But Mr. Wise glosses over the issue of whether there was actually a conflict of interest in

2  the first place.[7]

3        The claimed conflict was Mr. Wolf's representation of another individual whom Ms.

4  Brown was interested in interviewing "concerning an investigation that was *unrelated* to Mr.

5  Wise." Hutchison Decl. ¶ 3 (emphasis added).  If the other matter was not related in any way to

6  Mr. Wise's case – and there is nothing to suggest to the contrary – then it is difficult to find a

7  logical basis to find a conflict of interest, *i.e.*, divided loyalties.  *See Quinones v. Miller*, No. 01

8  Civ. 10752 (WHP) (AJP), 2003 U.S. Dist. LEXIS 9176, at *107 (S.D.N.Y. June 3, 2003) (in

9  assessing whether there was an actual conflict of interest, considering whether the two cases were

10  substantially related or relevant confidences were shared); *see also* Mot. at 27 (noting that Mr.

11  Wise "cites to no cases where courts found that an ethical conflict existed because a defense

12  attorney represented clients in unrelated matters before the same prosecutor").

13        Mr. Wise protests that Mr. Wolf "agreed to become involved in [Mr. Wise's] case in order

14  to 'curry favor' with [Ms.] Brown for his other clients." Hutchison Decl. ¶ 6.  But this amounts to

15  sheer speculation that Mr. Wolf purposefully compromised his representation of Mr. Wise in order

16  to advance his other clients' interests.  Nothing in logic or the record supports such a speculative

17  inference.

18        Notably, Mr. Wise's argument, unsupported by any fact, is troubling because, if accepted it

19  would call into question the ability of a criminal defense attorney to represent two defendants *in*

20  *unrelated matters* before the same prosecuting agency; an argument could always be made that the

21  defense attorney took action in one case to the defendant's detriment in order to benefit the

22  defendant in the other case.  The "workability" of Mr. Wise's position is something fair to

23  consider under Ninth Circuit case law.  For example, in *Bonin v. Calderon*, 59 F.3d 815 (9th Cir.

24

25  _____

26  [7] In its papers, the government also argues that, even if there were an actual conflict, any claimed
adverse effect on Mr. Wolf's performance is insufficiently pled.  *See, e.g.*, Reply at 10 *et seq.*
(arguing that there are no allegations to support the theory that Mr. Wolf pressured Mr. Wise to

27  plead; also arguing that there are no allegations identifying with specificity what litigation strategy
was abandoned because of the conflict).  The government further argues that there was no viable
alternative strategy before Mr. Wise.  *See, e.g.*, Reply at 13 *et seq.*  For the reasons discussed

28  *infra*, the Court need not reach those arguments.

1995), the Ninth Circuit noted: "The fact that an attorney undertakes the representation of a client because of a desire to profit does not by itself create the type of direct 'actual' conflict of interest required by *Cuyler*." *Id.* at 826.

> If the types of conflicts alleged by Bonin were to be cognizable under *Cuyler*, the rule would become hopelessly unworkable. As human beings, attorneys always have interests of their own independent of those of their clients. Where a direct and significant conflict of interest exists between a defendant and his client, it is reasonable to presume that the defendant has been prejudiced as a result. However, minor or potential conflicts of interest often exist which might theoretically or conceivably affect an attorney's representation, but are not likely to do so. Such "potential" conflicts are insufficient under *Cuyler*. In the absence of an "actual" conflict which squarely places the interests of the client in opposition to those of the attorney, and is likely to compromise a reasonable attorney's ability to comply with his legal and ethical obligation to represent his client with undivided loyalty, the *Cuyler* standard cannot be met. If a mere "potential" or "theoretical" conflict does affect an attorney's representation in a particular case, the defendant is not without recourse. However, he cannot rely on *Cuyler* and obtain relief merely upon a showing of "adverse effect," but must instead make the showing required by *Strickland* [*v. Washington*] that counsel's performance was objectively unreasonable and that he suffered prejudice as a result.

*Id.* at 827.

Finally, the Court notes that, similar to above, Mr. Wise has asked for discovery to explore the claimed conflict of interest on the part of Mr. Wolf. But here there is no good cause for discovery given that there is nothing to indicate that Mr. Wolf's representation of the other client was in any way related to Mr. Wise's case.

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL –
## DEFICIENT PERFORMANCE

In addition to the conflict-based ineffective assistance claims, Mr. Wise has brought more traditional ineffective assistance claims – more specifically, that his counsel, Mr. Wolf, provided deficient performance that was prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (noting that a claim for ineffective assistance of counsel has two components: (1) "the defendant must show that counsel's performance was deficient" and (2) the defendant must show that the deficient performance prejudiced the defense").

In assessing these claims, the Court bears in mind that, under § 2255,

10

> [u]nless the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney [and] grant a prompt [evidentiary] hearing thereon . . . .

28 U.S.C. § 2255(b) (emphasis added); *see also Rodrigues*, 347 F.3d at 824 (stating that "[a] district court must grant a federal habeas petitioner's motion for an evidentiary hearing 'unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief'").  The Ninth Circuit has acknowledged that "section 2255 imposes a fairly lenient burden on the petitioner" in this regard but has added that "the petitioner is nonetheless 'required to allege *specific facts* which, if true, would entitle him to relief.'"  *Id.* (emphasis added); *see also United States v. Batamula*, 823 F.3d 237, 246 (5th Cir. 2016) (stating that, "where a petitioner makes specific factual claims that are 'not speculative, conclusory, plainly false, or contradicted by the record,' he is entitled to an evidentiary hearing"); *Daniels v. United States*, 54 F.3d 290, 293 (7th Cir. 1995) (stating that "a hearing is not necessary if the petitioner makes conclusory or speculative allegations rather than specific factual allegations").  Thus, to show that a district court erred in not granting an evidentiary hearing, a petitioner "must allege specific facts which, if true, would entitle him to relief" and "the petition, files and record of the case cannot conclusively show that he is entitled to no relief.  *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004).

The relevant background for Mr. Wise's traditional ineffective assistance claims is provided below.

A.    Relevant Background

The relevant background for Mr. Wise's traditional ineffective assistance claims (based on the record submitted) is as follows.

- In February 2012, the government filed an indictment against Mr. Wise, charging him with, *inter alia*, mail and wire fraud, money laundering, and so forth.  *See* Pet., Ex. 1 (indictment).

- On February 29, 2012, Mr. Wise learned of the indictment.  *See* Wise Decl. ¶ 3.  At the time, Mr. Wise was in Canada.  (He is a Canadian citizen.)  *See* Wise Decl. ¶ 2. He hired a Canadian attorney (Daniel Brown) to negotiate an agreement with the

11

government "whereby [he] would voluntarily travel to San Francisco and surrender to U.S. authorities in exchange for an agreement that after I was sentenced I would be able to transfer back to Canada." Wise Decl. ¶ 4.  Mr. Wise does not dispute that a transfer back to Canada was significant not only because it is home but also because, there, he would be eligible for parole.  *See* Mot. at 6 (explaining that, "unlike the United States, Canada has a parole system for its federal prisoners"). Ultimately, Mr. Wise "agreed to self-surrender to U.S. authorities in San Francisco in exchange for the U.S. Attorney's promise and agreement that *if [he] pled* and was sentenced to prison in the United States [he] would be allowed to apply to transfer to Canada after [he] had served the longer of 54 months or 1/3 of my sentence, and the U.S. Attorney's Office would not . . . oppose my application to transfer and serve the remainder of my sentence in Canada."  Wise Decl. ¶ 7 (emphasis added).  As indicated by Mr. Wise's declaration, to get the benefit of the transfer back to Canada, he had to plead out and *not* go to trial.

- In March 2012, Mr. Wise learned that Mr. Wolf had been appointed to represent him.  *See* Wise Decl. ¶ 5.

- On April 16, 2012, Mr. Wise surrendered to U.S. authorities.  *See* Wise Decl. ¶ 8. When Mr. Wise arrived in the United States, he intended to cooperate in the investigation of his co-defendant, Jacquline Hoegel (an "underling" in the fraud scheme), and in the recovery of funds for victims of the fraud – more specifically, so that he would get a reduced sentence.  *See* Wise Decl. ¶ 15.

- Shortly after Mr. Wise surrendered to the U.S. authorities, he began to be interviewed by the government.  More specifically, between late April 2012 and July/August 2012, he was interviewed three times.  *See* Wise Decl. ¶ 20; *see also* Pet., Ex. 43 (Gov't's Sentencing Memo. at 2) (noting that two lengthy interviews were conducted on April 26, 2012, and May 21, 2012).  Mr. Wolf did not prepare Mr. Wise for these interviews.  For example, although Mr. Wise met with Mr. Wolf before his first interview in late April 2012, Mr. Wolf simply counseled Mr. Wise

that he should tell the truth.  The two "did not discuss details of [Mr. Wise's] case, possible defenses [he] might have, or the risks and potential outcomes if [he] cooperated and pled instead of exercising [his] right to a trial."  Wise Decl. ¶ 21.

- Leading up to the plea hearing in September 2012, Mr. Wise had limited contact with Mr. Wolf.  Mr. Wolf either did not show up to meetings or would send a junior attorney instead who could not properly give advice or answer questions.  *See* Wise Decl. ¶ 26.

- Before the plea agreement was signed, Mr. Wise met with Ms. Brown (the AUSA) two times because he still had questions about the plea agreement.  One meeting was on September 6, 2012, and the other on September 12, 2012 (*i.e.*, the day the plea agreement was actually signed).  *See* Wise Decl. ¶¶ 27-29.

Against this background, Mr. Wise makes two arguments as to why Mr. Wolf provided ineffective assistance.

- First, Mr. Wise claims ineffective assistance on the ground that Mr. Wolf failed to conduct adequate discovery and/or an investigation (a) before Mr. Wise was first interviewed by the government in April 2012 (*i.e.*, approximately ten days after he surrendered), and (b) for several months thereafter, more specifically, before Mr. Wise ultimately signed the plea agreement in September 2012.  *See* Pet. at 3.

- Second, Mr. Wise contends that Mr. Wolf's performance was deficient because (a) he failed to adequately advise Mr. Wise about the risk that the government might not make a substantial assistance (*i.e.*, 5K[8]) motion and/or that the Court could

_____

[8] Chapter 5K of the Sentencing Guidelines addresses sentencing departures.  U.S.S.G. § 5K1.1 provides as follows:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
>
> (a)     The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

**United States District Court**
For the Northern District of California

1    ignore such a motion and (b) he failed to insist on a Rule 11(c)(1)(C) plea which

2    would protect against the government reneging on a promise to file a 5K motion.

3    These two subtheories are intimately intertwined and are dealt with together.

4    B.    <u>Failure to Conduct Adequate Discovery and/or an Investigation</u>

5    As noted above, Mr. Wise's first theory of ineffective assistance is that Mr. Wolf failed to

6  conduct adequate discovery and/or an investigation.  Mr. Wise argues that Mr. Wolf did not do

7  *any* discovery or investigation before Mr. Wise was first interviewed by the government.  (Mr.

8  Wolf surrendered to U.S. authorities in mid-April 2012; he was interviewed the first time ten days

9  thereafter.)  Mr. Wise further argues that Mr. Wolf did not conduct sufficient discovery or

10  investigation before Mr. Wise ultimately signed the plea agreement in September 2012.

11  According to Mr. Wise, these acts or omissions by Mr. Wolf are particularly problematic because,

12  as Mr. Wolf conceded at a pre-sentencing hearing in September 2014, there was "a huge room of

13  discovery" in Mr. Wise's case, but "there's never been a significant review on his behalf of that

14  discovery."[9]  Pet., Ex. 41 (Tr. at 6).

15  The government argues that there was no deficient performance by Mr. Wolf because Mr.

16  Wise had already decided he was going to plead out and cooperate in order to get a reduced

17  sentence – which then affected Mr. Wolf's options as to what discovery or investigation actually

18  

19    (1)    the court's evaluation of the significance and
20           usefulness of the defendant's assistance, taking into
           consideration the government's evaluation of the
           assistance rendered;

21    (2)    the truthfulness, completeness, and reliability of any
22           information or testimony provided by the defendant;

23    (3)    the nature and extent of the defendant's assistance;

24    (4)    any injury suffered, or any danger or risk of injury to
25           the defendant or his family resulting from his
           assistance;

26    (5)    the timeliness of the defendant's assistance.

27  U.S.S.G. § 5K1.1.

28  [9] Mr. Wolf indicated that the review had not been done because "it wasn't necessary, so time
    wasn't wasted."  Pet., Ex. 41 (Tr. at 6).

14

needed to be done (*i.e.*, little).  The government cites *Burger v. Kemp*, 483 U.S. 776 (1987), in

support.  There, the Supreme Court stated as follows:

> "The reasonableness of counsel's actions may be determined or
> substantially influenced by the defendant's own statements or
> actions.  Counsel's actions are usually based, quite properly, on
> informed strategic choices made by the defendant and on
> information supplied by the defendant.  In particular, what
> investigation decisions are reasonable depends critically on such
> information.  For example, when the facts that support a certain
> potential line of defense are generally known to counsel because of
> what the defendant has said, the need for further investigation may
> be considerably diminished or eliminated altogether.  And when a
> defendant has given counsel reason to believe that pursuing certain
> investigations would be fruitless or even harmful, counsel's failure
> to pursue those investigations may not later be challenged as
> unreasonable."

*Id.* at 795.

While the government's position is not without some merit (*e.g.*, it is plausible that Mr.

Wise did intend to plead out because his surrender agreement was that he would get the transfer

back to Canada only if he pleaded out and was sentenced thereafter), it is also problematic.  For

example, *Burger* states that counsel's actions are usually based on *informed* strategic choices made

by the defendant.  Therefore, even if Mr. Wise wanted to plead out and cooperate, arguably, Mr.

Wolf should have done at least some investigation to make sure that that was an informed choice

by Mr. Wise before allowing him to be interviewed by the government.[10]  Moreover, Mr. Wise

makes a fair argument that, even if he wanted to plead out and cooperate initially, he later had

misgivings as the time for him to sign the plea agreement drew near.  That Mr. Wise had

misgivings is evidenced by the fact that he asked to meet Ms. Brown two times before the plea

agreement was signed.  The government suggests that Mr. Wise's misgivings were limited

because, apparently, Mr. Wolf told Mr. Wise's current counsel that Mr. Wise's concerns about the

plea agreement did not have anything to do with its substance but rather its language; also, "he

---

[10] The government contends that Mr. Wise had an incentive to start his cooperation immediately –
*i.e.*, to make sure that he provided cooperation before Ms. Hoegel could, *e.g.*, plead out.  While
this is a fair argument, that still does not foreclose Mr. Wise's point that the initial interview could
have been delayed somewhat rather than having the interview take place almost immediately after
his surrender to U.S. authorities.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

wanted to beat the 54 month period in the transfer agreement."[11]  Hutchison Decl. ¶ 20.  But in his declaration, Mr. Wise also states that he was "reluctant to plead to *all* of the charges."  Wise Decl. ¶ 30 (emphasis added; adding that he was told by Mr. Wolf and Ms. Brown that pleading to all counts was "necessary so that it would not look like I was getting a deal").  Furthermore, the terms of the plea were presumably subject to negotiation.  Preparing a client for any debriefing or discussions with the government would be an expected part of representation in the context of plea negotiations.  *See Torres v. Lopez*, No. CV 10-3537-JLS (SP), 2014 U.S. Dist. LEXIS 177430, at *36-37 (C.D. Cal. Sep. 17, 2014) (stating that "[p]lea negotiations are a 'critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel'") (citing *Padilla v. Ky.*, 559 U.S. 356, 374 (2010)).

Because Mr. Wise states a plausible claim of deficient representation by Mr. Wolf, the Court should grant Mr. Wise's request for an evidentiary hearing, *see* 28 U.S.C. § 2255(b) (providing that, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto"), unless the § 2255 motion and the files and records of the case conclusively show there was no prejudice as a result of the ineffective assistance of counsel, as required under *Strickland*.

In the context of guilty pleas, the prejudice prong of *Strickland* requires a petitioner to show that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  For example, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.*  Alternatively, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would have received a better plea

---

[11] As noted above, Mr. Wise "agreed to self-surrender to U.S. authorities in San Francisco in exchange for the U.S. Attorney's promise and agreement that if [he] pled and was sentenced to prison in the United States [he] would be allowed to apply to transfer to Canada after [he] had served the longer of 54 months or 1/3 of my sentence, and the U.S. Attorney's Office would not . . . oppose my application to transfer and serve the remainder of my sentence in Canada."  Wise Decl. ¶ 7.  The actual terms of any plea agreement had not been reached.

United States District Court
For the Northern District of California

bargain.  *See Howard*, 381 F.3d at 882 (stating that, "[t]o satisfy *Strickland*'s prejudice prong, [petitioner] must allege that but for counsel's errors, he would either have gone to trial or received a better plea bargain").  *See, e.g.*, *Missouri v. Frye*, 132 S. Ct. 1399, 1409-10 (2012) (noting that, "[i]n a case . . . where a defendant pleads guilty to less favorable terms and claims that ineffective assistance caused him to miss out on a more favorable earlier plea offer, *Strickland*'s inquiry into whether 'the result of the proceeding would have been different' requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed").

> 1.   Option of Rejecting the Plea Offer and Going to Trial

In the instant case, the § 2255 motion and the files and records conclusively show that there is no reasonable probability that, but for Mr. Wolf's failure to conduct discovery or investigate, Mr. Wise would not have pleaded guilty and instead would have insisted on going to trial.  Notably, in his papers, Mr. Wise failed to identify *any* evidence that Mr. Wolf would have uncovered (had he conducted discovery or investigation) that would have strengthened Mr. Wise's case on the merits or weakened the prosecution's.  This case is unlike typical ineffective assistance cases in which the habeas petitioner/criminal defendant points to exculpatory or mitigating evidence the counsel should have discovered or brought out at trial or to harmful evidence that should have been excluded had counsel been effective.  *See, e.g.*, *Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) (stating that counsel's "incompetence served to deprive [petitioner] of the most critical evidence supporting his best defense").  Instead, Mr. Wise's petition points to nothing that he contends competent counsel should have discovered that would have materially enhanced his prospects at trial.

At the hearing on the government's motion to reconsider, Mr. Wise suggested – for the very first time – that some exculpatory information would likely have been found given that the government ultimately dropped the main charges against his co-defendant, Jacquline Hoegel.  But this argument suffers from multiple problems.  First, the argument has been waived because Mr. Wise did not expressly raise it in his papers even though circumstances of the Hoegel prosecution were known to him at the time the petition was filed.  Second, Mr. Wise has failed to point to

specific or concrete evidence from the Hoegel case that would have benefitted him. Ultimately, Mr. Wise is just speculating that there is helpful evidence underlying the charging decision therein. Although at the hearing, Mr. Wise mentioned a potential problem with a prospective government witness, he offered nothing specific about the value or nature of her testimony or what precisely competent counsel would have found that would tend to exculpate him. Third, Mr. Wise completely ignores the fact that he and Ms. Hoegel were far from being similarly situated with respect to the fraudulent scheme. There is no real dispute that Mr. Wise was the mastermind of the fraudulent scheme while Ms. Hoegel was more of an "underling," as underscored by the fact that Ms. Hoegel's gain from the scheme amounted to only a fraction of Mr. Wise's. *See* Mot. at 19; *see also* Docket No. 128 (noting that Mr. Wise "gained personally $50 million out of this scheme and [Ms. Hoegel] and her husband gained 3.4 [million]"). That the lesser participant ended up facing lesser charges is not surprising and does not, on its own, suggest Mr. Wise's innocence.

The lack of any reasonable probability of Mr. Wise insisting on a trial is further established by the fact that, if he were to go to trial, he would lose the transfer-back-to-Canada deal that was the whole basis for his agreement to "surrender to U.S. authorities" in the first place. Wise Decl. ¶ 4; *see also* Wise Decl. ¶ 7 (stating that, if the U.S. Attorney's Office had not agreed to the transfer-back provision, he "would not have flown to the United States and surrendered").[12]

---

[12] In his opposition to the government's motion to reconsider, Mr. Wise suggests, for the first time, that he would have gone to trial rather than plead but because there was a significant risk that Canada would not accept a transfer. But the evidence that Mr. Wise presents (an unsigned memo from Mr. Wolf's office) does not establish such a risk. While the memo does state that, "[b]etween the years of 2005 and 2010, about 50% of [the transfer] applications were denied and 18% were transferred," it goes on to explain that "[m]any of the denials come *from the foreign country that the offender is being held in.* (87% to 13%.)" Docket No. 205-1 (exhibit attached to Clough declaration) (emphasis added). Here, the U.S. government agreed that it would not oppose transfer to Canada after Mr. Wise served a certain part of his sentence in the United States.

It is also worth noting that, at the time the Canada transfer deal was first negotiated, Mr. Wise was represented by a Canadian attorney, not Mr. Wolf. *See* Wise Decl. ¶ 4 ("Canadian Attorney Danial Brown became involved in negotiations with AUSA Tracie Brown to negotiate an agreement whereby I would voluntarily travel to San Francisco and surrender to U.S. authorities in exchange for an agreement that after I was sentenced I would be able to transfer back to Canada."). Mr. Wise has never suggested his Canadian attorney failed to provide effective assistance.

Moreover, if Mr. Wise were to go to trial rather than plead out, he would have lost not only the possibility of a 5K motion based on substantial assistance to the government but also, in all likelihood, the downward adjustment in offense level (–3) based on acceptance of responsibility. *See* Plea Agreement ¶ 7(f); Presentence Rpt. at 12. *Including* the –3 for acceptance of responsibility, Mr. Wise would have an offense level of 39; without it, he would have an offense level of 42. With a Criminal History Category I, *see* Presentence Rpt. at 13, that would have been a guideline sentence instead of 360 months to life.

Mr. Wise protests that, in spite of the above, the Court cannot conclusively rule against him and deprive him of an evidentiary hearing because he has submitted a declaration in which he states: "But for [Mr.] Wolf's deficient advice, I would not have signed the plea agreement on September 12, 2012." Wise Decl. ¶ 51. But that conclusory claim in his declaration – precisely because it is lacking in any specific facts in support – is not enough to warrant relief or even to get Mr. Wise an evidentiary hearing. *See Rodrigues*, 347 F.3d at 824 (noting that, although § 2255 imposes a fairly lenient burden on a petition to get an evidentiary hearing, a petitioner is still required to allege specific facts which, if true, would entitle him to relief); *see also United States v. Rivers*, No. 14-15338, 2016 U.S. App. LEXIS 13458, at *13 (11th Cir. July 25, 2016) (stating that "[a] conclusory allegation of prejudice is not sufficient[;] [i]nstead, the defendant must allege specific facts suggesting that he would not have decided to plead guilty but for his attorney's alleged errors or omissions"); *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) (stating that petitioner/defendant "cannot meet the threshold requirement for securing an evidentiary hearing" because he "presented no detailed and specific affidavit, merely bare allegations"); *United States v. Quan*, 789 F.2d 711 (9th Cir. 1986) (stating that, "[w]here a prisoner's motion presents no more than conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required"); *Contant v. Sabol*, 987 F. Supp. 2d 323, 332 (S.D.N.Y. 2013) (indicating that a "'conclusory claim . . . that [the petitioner] would have gone to trial but for counsel's alleged ineffectiveness, standing alone, does not establish prejudice under *Strickland*'"); *cf. Rosin v. United States*, 786 F.3d 873, 879 (11th Cir. 2015) (rejecting petitioner's prejudice argument "in the absence of any evidence other than his own conclusory after-the-fact

United States District Court
For the Northern District of California

assertion – and given the record evidence contradicting it"); *Anthoulis v. New York*, 586 Fed. Appx. 790, 792 (2d Cir. 2014) (stating that, given the circumstances, "a fairminded jurist could reject Anthoulis's conclusory statement that he would have rejected the deal and insisted on going to trial").[13]

2.    Option of a Better Plea Offer

Absent any reasonable probability that Mr. Wise would have gone to trial, to show prejudice under *Strickland*, Mr. Wise must show that there is a reasonable probability that he would have gotten a better plea deal but for Mr. Wolf's failure to conduct discovery or investigate. Here as well, the § 2255 motion and the files and record of the case conclusively show that there was no such reasonable probability. First, similar to above, Mr. Wise has not pointed to any exculpatory evidence that Mr. Wolf failed to discover that could have led the government to offer a better plea deal. He points to nothing that would have changed the parties' bargaining posture. In this regard, *United States v. Baramdyka*, 95 F.3d 840 (9th Cir. 1996) is persuasive. There, the Ninth Circuit noted that the petitioner did not contend that, but for counsel's deficient performance he would have proceeded to trial; "[i]nstead, he suggests that knowledge of [a certain] defense would have placed him in a better bargaining position with the government." *Id.* at 846. The Ninth Circuit concluded that there was no prejudice because petitioner "failed to demonstrate that he would have received a better plea agreement had he known of his jurisdictional defense," and "[a]ny increased bargaining power is entirely speculative and unlikely in this case given the seriousness of the charges and defendant's role as a leader of the organization." *Id.* A similar analysis is applicable here.

Second, there is no indication that the government had any inclination to give Mr. Wise a better plea. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012) (noting that "defendants have 'no

---

[13] The Court does not read *Howard*, 381 F.3d at 873, to the contrary. *Howard* was informed by the fact that the petitioner was pro se. *See id.* at 883 ("Given Howard's pro se status when pursuing his § 2255 petition before the district court, we shall interpret this allegation as a sufficient statement that he would not have entered the plea and would have taken the case to trial if his counsel had not permitted him to plead while incompetent. This specific allegation, if true, would establish prejudice."). Moreover, the facts here more compellingly demonstrate (compared to *Howard*) that there is no reasonable probability Mr. Wise would have gone to trial.

**United States District Court**
For the Northern District of California

1    right to be offered a plea . . . nor a federal right that the judge accept it'").  This is so even though,

2    as Mr. Wise concedes, that at the time of the plea bargain in September 2012 the government was

3    strongly incentivized to obtain Mr. Wise's cooperation.  If anything, this underscores the timing of

4    the plea bargain was ideal for Mr. Wise.  Time was not on his side.

5         Moreover, since Mr. Wise was sentenced to the low end of the Guideline range, any better

6    plea offer would have had to have been either (1) a plea in which the government guaranteed that

7    it would file a motion for departure under U.S.S.G. § 5K1.1 or (2) a plea under Rule 11(c)(1)(C),[14]

8    guaranteeing a below-Guideline variance.  Neither was a real possibility.  The Court has never

9    seen in this District a plea deal under which the government guarantees the criminal defendant that

10   it will file a 5K motion for departure from the Sentencing Guidelines (based on substantial

11   assistance to the government) at the time of the plea, prior to completion of the assistance.  At the

12   time of a plea, it is impossible to predict how the defendant will perform on all the factors to be

13   considered under § 5K1.1.  Section 5K1.1 decisions are made *after* the defendant's cooperation,

14   not before.  Indeed, neither the government nor the defense represented that it had ever seen such a

---

[14] Under Federal Rule of Criminal Procedure 11(c)(1)(C), a

> plea agreement may specify that an attorney for the government will
> . . .
>
> (C)    agree that a specific sentence or sentencing range is the
>        appropriate disposition of the case, or that a particular
>        provision of the Sentencing Guidelines, or policy statement,
>        or sentencing factor does or does not apply (such a
>        recommendation or request binds the court once the court
>        accepts the plea agreement.

Fed. R. Crim. P. 11(c)(1)(C).

In contrast, Rule 11(c)(1)(B) provides that a plea agreement may specify that a government attorney will

> (B)    recommend, or agree not to oppose the defendant's request,
>        that a particular sentence or sentencing range is appropriate
>        or that a particular provision of the Sentencing Guidelines, or
>        policy statement, or sentencing factor does or does not apply
>        (such a recommendation or request does *not* bind the court) .
>        . . .

Fed. R. Crim. P. 11(c)(1)(B) (emphasis added).

**United States District Court**
For the Northern District of California

1    deal wherein a 5K motion is guaranteed in advance.

2         As for the possibility of a plea under Rule 11(c)(1) which would have had to have set a

3    specific sentence or sentencing range below the Guideline range, that was not a plausible option

4    either.  As reflected in the presentence report, the applicable Sentencing Guidelines range for Mr.

5    Wise was 262-327 months.  *See* Presentence Rpt. at 21.  The Court ultimately sentenced Mr. Wise

6    to the bottom of that range – *i.e.*, 262 months.  *See* Docket No. 119 (Judgment at 2).  Thus, the

7    only better plea deal would be one under which Mr. Wise would get a below-Guidelines sentence.

8    Mr. Wise has not made any allegations or offered any evidence that the government would have

9    offered a below-Guidelines sentence, particularly given the circumstances in his case – a $130

10   million Ponzi scheme over which the defendant had control, which impacted multiple victims, and

11   wherein he diverted vast sums for his personal use.  Here, unlike *Lafler*, the issue is not whether

12   the criminal defendant would have accepted a plea actually offered by the government had he been

13   effectively represented; here, there was no alternative plea offer.  Instead, Mr. Wise must

14   hypothesize and prove the government would have made a better offer had Mr. Wolf been more

15   effective.  Mr. Wise has made not even a semblance of such a showing.[15]

16        Moreover, the prejudice prong of *Strickland* can be satisfied only if the petitioner

17   establishes a plea offer would have been made by the government *and* accepted by the Court.  *See*

18   *Lafler*, 132 S. Ct. at 1387 (noting that "defendants have 'no right to be offered a plea . . . nor a

19   federal right that the judge accept it'"); *see also Frye*, 132 S. Ct. at 1410 (stating that, "[i]n order

20   to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable

21   probability they would have accepted the earlier plea offer must also show that, if the prosecution

22

23   ─────────────────────

24   [15] To prove such would also raise troubling issues as to privilege.  Mr. Wise would seek to compel the testimony of a former Assistant U.S. Attorney (who is now a sitting Superior Court judge) as to what she was thinking, what she knew, what she might have offered, etc.  This raises issues not present as in *Lafler* where there was a concrete offer and the issue was whether defendant would have accepted it, not what lay with the mind of the prosecutor.  *Cf. Locurto v. United States*, No. 10-CV-4589 (NGG) (JO), 2016 U.S. Dist. LEXIS 107037, at *23-38 (E.D.N.Y. Aug. 11, 2016) (noting that "[m]ost courts . . . have interpreted *Lafler* and *Frye* to require the extension of a formal plea offer in order for a petitioner to prevail on claims of ineffective assistance in the context of plea negotiations"; questioning that approach and indicating that other "cases, along with *Frye*, suggest that whether an offer is formal or not may have more to do with whether it is capable of documentation and less with whatever label prosecutors choose to apply to it").

had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented").  Mr. Wise has not shown there is any reasonable probability that the Court would have accepted such a deal that would have guaranteed a below-Guidelines sentence.  Indeed, the record clearly reflects that the Court would not have accepted a below-Guidelines plea deal.  At the sentencing hearing, Court emphasized that "this is one of the most egregious fraud scheme that I have seen, both in magnitude, the number of victims, the human toll that has been exacted on people"; that "[t]here was no attempt within the scheme to try to find high-yield investments, actually pay back investors" but instead this was just a "pyramiding scheme"; and that Mr. Wise

> skim[med] off some $50 million to his own benefit and . . . live[d] a luxurious lifestyle throughout the world.  So frankly, it's one of the most despicable kind of offenses I have seen.  This is not one that was undertaken out of any compelling reason, such as trying to make up for losses of a company or trying to come up with resources for family members who are ill or impoverished or any other purpose other than pure greed.
>
> . . . .
>
> In terms of the history and characteristics of the defendant, I find that in terms of traditional mitigating factors, I find none here. . . . We see somebody who grew up with privilege and enjoyed a life of privilege with high education.  So there's nothing, nothing I see with respect to any mitigating circumstances.
>
> This is a serious offense . . . . [T]here is a need to protect the public in a larger sense and to make sure that a deterrence factor generally is fulfilled here.  And I think a light sentence would send exactly the wrong message.

Docket No. 128 (Tr. at 46-48).

Because there is no reasonable possibility that, but for Mr. Wolf's deficient performance, Mr. Wise would have secured from the government and obtained the Court's approval of a better plea deal or (as discussed above) insisted on going to trial, Mr. Wise has failed to establish a sufficient showing of *Strickland* prejudice.  Because the record is conclusive on this point, Mr. Wise is not entitled to either habeas relief or even the more limited relief of an evidentiary hearing.

C.      Failure Related to 5K Motion

Mr. Wise also asserts ineffective assistance of counsel on the basis that Mr. Wolf failed to advise him properly about the risk that the government might not make a 5K motion or that the Court could effectively ignore such a motion and because Mr. Wolf failed to insist on a Rule 11(c)(1)(C) plea to protect against the government from reneging on a promise to make a 5K motion. Mr. Wise underscores that Mr. Wolf admitted at one of the hearings before the Court (in May 2014) that he had de minimis experience with 5K motions, *see* Pet., Ex. 36 (Tr. at 7[16]), which is particularly problematic given that Mr. Wise's primary interest was to persuade the government to file such a motion. *See* Pet. at 14.

Mr. Wise's 5K argument is problematic because it fails to take into account that the plea agreement made express – and the plea colloquy made clear – that the government made no promise it would file a 5K motion. The plea agreement states:

> 11.    I agree that the government's decision whether to file a motion pursuant to U.S.S.G. § 5K1.1, as described in the government promises section below, is based on its sole and exclusive decision of whether I have provided substantial assistance and that  decision will be binding on me.  I understand that the government's decision whether to file such a motion, or the extent of the departure recommended by any motion, will not depend on whether convictions are obtained in any case.  I also understand that the Court will not be bound by any recommendation made by the government.

---

[16] At a Court hearing in May 2014, Mr. Wolf stated:

> You know that I have been a criminal defense lawyer in the federal courts for a long time, but my experience with 5Ks is diminimus [sic].  It's not just something I've done a lot.

> I was requested to take this case because of the nature of it and agreed to do so.  I think they went off the list of the panel and had me do that.

> I'm not sure I'm the right lawyer for this case because of that and, perhaps, just because of the lack of communication and trust Mr. Wise has.

Pet., Ex. 36 (Tr. at 7); *see also* Pet., Ex. 36 (Tr. at 8) (Mr. Wolf stating that "maybe [Mr. Wise] would be better suited to have someone who has more experience, maybe an ex-U.S. Attorney or someone who has – just has more experience in 5K deals, particularly in white collar cases").

United States District Court
For the Northern District of California

. . . .

20.   If, in its sole and exclusive judgment, the government decides that the defendant has cooperated fully and truthfully, provided substantial assistance to law enforcement authorities within the meaning of U.S.S.G. § 5K1.1, and otherwise complied fully with this Agreement, it will file with the Court a motion under § 5K1.1 and/or 18 U.S.C. § 3553 that explains the nature and extent of the defendant's cooperation and recommends a downward departure.

Pet., Ex. 52 (Plea Agmt. ¶¶ 11, 20).

Furthermore, at the plea hearing, the Court asked Mr. Wise directly if there were any promises made other than what was in the plea agreement. He confirmed there was not. Thus, the record is clear and undisputed that Mr. Wise was informed that no 5K motion was guaranteed. Such a motion was left to the discretion of the government based on how his assistance played out. Nothing in the record raises a reasonable probability that he would have rejected the plea had Mr. Wolf advised him that the plea agreement did not guarantee such a motion would be made; Mr. Wise already knew that.

Potentially, Mr. Wise has a better argument for deficient performance vis-à-vis a Rule 11(c)(1)(C) plea deal. It is not clear from the record whether Mr. Wolf discussed a Rule 11(c)(1)(C) plea agreement with Mr. Wise in the first place. If not, that might be problematic given that Mr. Wise was otherwise banking on cooperation with the government and the Court's recognition of that to get a reduced sentence. It is also not clear whether Mr. Wolf discussed the possibility of a Rule 11(c)(1)(C) plea deal with Ms. Brown. Again, if not, that would be troubling.

But even if the Court were to assume deficient performance for failure to advise regarding a Rule 11(c)(1)(C) deal (or even, for that matter, a 5K deal), the record conclusively establishes there is no reasonable probability that the government would have offered a better plea or that the Court would have accepted a below-Guideline Rule 11(c)(1)(C) plea, for the reasons stated above. Accordingly, here as well, Mr. Wise is not entitled to relief or an evidentiary hearing.

D.   Summary

For the foregoing reasons, the Court concludes that an evidentiary hearing is not warranted on either of Mr. Wise's claims of *Strickland* ineffective assistance of counsel, and Mr. Wise's § 2255 petition based on these claims is denied.

**United States District Court**
For the Northern District of California

## V.   <u>BREACH OF PLEA AGREEMENT</u>

Finally, Mr. Wise has challenged his sentence on the basis that the government breached the plea agreement that he signed.  More specifically, Mr. Wise contends that, pursuant to the plea agreement, the government promised to file a 5K motion based on the cooperation that he had already provided to it, and the government breached that promise by not filing such a motion and submitting evidence that would, if anything, prejudice the Court against him (*e.g.*, pictures of Mr. Wise hobnobbing with his girlfriends).

A.   <u>Relevant Background</u>

The relevant background for this contention is as follows:

- In July 2012, Ms. Brown sent to Mr. Wolf the first draft of the plea agreement.  *See* Pet., Ex. 11 (e-mail).

- In August 2012, as the plea agreement was being negotiated, Ms. Brown sent an e-mail to Mr. Wolf in which she stated, *inter alia*, "I can't promise the extent of his 5K, but based on what he's done so far (and assuming he doesn't screw up in the future), I think you can feel confident he will get a 5K recommendation from me.  And the extent of the 5K departure is up to Chen anyway.  I think we can both guess at what Chen is likely to do at sentencing with this guy, and I'm going to go out on a limb and say Wise is not getting 262-327."  Pet., Ex. 12 (e-mail).  (Mr. Wise was eventually sentenced to 262 months.)

- Before Mr. Wolf signed the plea agreement on September 12, 2012, he had two meetings with Ms. Brown.

- At the first meeting, on September 6, 2012, Ms. Brown "assured [Mr. Wise] she was satisfied with his cooperation and assistance, and that she would file a 5K1.1 motion and/or otherwise urge the Court to give me a reduced sentence."  Wise Decl. ¶ 27.

- At the second meeting, which took place immediately before Mr. Wise pled guilty before the Court on September 12, 2012, Ms. Brown told Mr. Wise that he "would get a downward departure from the guidelines.  [He] asked [Ms.] Brown directly,

26

'I'm not getting like twenty years?'  She replied, 'No, nowhere near that.'  [He]

asked her again, directly, 'So, I'm not getting like twenty years?'  She replied,

'No,' adding that because [he] was meeting the 'gold standard' of witness

cooperation things would go well for [him]."  Wise Decl. ¶ 29.

- The plea agreement that Mr. Wise ultimately signed contained the following

  provisions regarding 5K motions:

> 11.    I agree that the government's decision whether to file a
>        motion pursuant to U.S.S.G. § 5K1.1, as described in the
>        government promises section below, is based on its sole and
>        exclusive decision of whether I have provided substantial
>        assistance and that decision will be binding on me.  I
>        understand that the government's decision whether to file
>        such a motion, or the extent of the departure recommended
>        by any motion, will not depend on whether convictions are
>        obtained in any case.  I also understand that the Court will
>        not be bound by any recommendation made by the
>        government.
>
> . . . .
>
> 20.    If, in its sole and exclusive judgment, the government
>        decides that the defendant has cooperated fully and
>        truthfully, provided substantial assistance to law enforcement
>        authorities within the meaning of U.S.S.G. § 5K1.1, and
>        otherwise complied fully with this Agreement, it will file
>        with the Court a motion under § 5K1.1 and/or 18 U.S.C. §
>        3553 that explains the nature and extent of the defendant's
>        cooperation and recommends a downward departure.

Pet., Ex. 52 (Plea Agmt. ¶¶ 11, 20).

- The plea agreement also contains the following provision: "I agree that this

  Agreement contains all of the promises and agreements between the government

  and me, and supersedes any other agreements, written or oral.  No modification of

  this Agreement shall be effective unless it is in writing and signed by all parties."

  Pet., Ex. 52 (Plea Agmt. ¶ 14).

- On January 28, 2015 (*i.e.*, a week before the sentencing hearing on February 4,

  2015, *see* Pet., Ex. 48 (sentencing hearing transcript)), the government filed its

  sentencing memorandum, in which it stated that it was not making a 5K motion.

  The government explained the reasoning behind this decision as follows: (1) Mr.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Wise and his co-defendant, Ms. Hoegel, were both indicted on February 21, 2012; (2) Mr. Wise was interviewed after his surrender to U.S. authorities on April 26, 2012, and May 21, 2012; (3) these interviews "did not substantially assist in the prosecution of [Ms.] Hoegel or anyone else." Pet., Ex. 43 (Gov't's Sentencing Memo. at 2); *see also* Pet., Ex. 45 (Gov't's Resp. Br. at 2) (asserting that "the absence of substantial assistance in the investigation and prosecution of another person is self evident[:] [Ms.] Hoegel and defendant were indicted at the same time; defendant then began cooperating with the government; charges were later dismissed against [Ms.] Hoegel; and no one else has ever been indicted as a result of defendant's cooperation").

- Prior to sentencing, the government also offered for the Court's consideration at pictures of, *e.g.*, Mr. Wise hobnobbing with girlfriends.

B.    Waiver

As a preliminary matter, the Court notes that in its motion, the government first argued for dismissal of this claim on the ground that Mr. Wise waived his right to bring a § 2255 motion based on breach of the plea agreement. The government pointed to the following provision in the plea agreement:

> I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, or motion under 18 U.S.C. § 3582, at any time in the future after I am sentenced, except that I reserve my right to claim that my counsel was ineffective in connection with the negotiation of this Agreement or the entry of my guilty plea.

Pet., Ex. 52 (Plea Agmt. ¶ 5). In its reply brief, however, the government conceded that its waiver argument was flawed – that is, Mr. Wise was "correct that, if he can establish a breach of the plea agreement, his waiver of his right to file a § 2255 petition is likely not binding on him." Reply at 17; *see also United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) (stating that "[a]n appeal waiver will not apply if . . . the sentence does not comport with the terms of the plea agreement"); *United States v. Buissereth*, 638 F.3d 114, 118 (2d Cir. 2011) (stating that "[a]n appeal waiver . . . does have some limits" – *e.g.*, "'[a] defendant may have a valid claim that the waiver of appellate

1    rights is unenforceable . . . when the government breached the plea agreement'"").

2    C.    Procedural Default

3         Although the government essentially gives up its waiver argument, it contends that there is

4    still another procedural ground to dismiss Mr. Wise's claim – *i.e.*, the he failed to raise the breach

5    claim at trial and therefore cannot collaterally attack his sentence unless there is cause and

6    prejudice for the procedural default.  *See Frady*, 456 U.S. at 167-68 (stating that "to obtain

7    collateral relief based on trial errors to which no contemporaneous objection was made, a

8    convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2)

9    'actual prejudice' resulting from the errors of which he complains").

10        The government argues that cause is lacking because, in his declaration, Mr. Wise admits

11   that, a month or two before the sentencing hearing, he learned that the government "*might* not be

12   filing a motion under U.S.S.G. section 5K1.1."  Wise Decl. ¶ 46 (emphasis in original).  Thus,

13   according to the government, Mr. Wise

14            had all the information necessary to raise a breach claim at the time
              the government filed its sentencing memorandum, eight days before
15            his sentencing.  Defendant nonetheless proceeded to sentencing,
              where both in his sentencing memorandum and at sentencing itself,
16            he attacked the government for not filing a § 5K1.1 motion but
              never raised the issue of breach or asked to withdraw his plea.  He
17            plainly did so because he determined that, had he withdrawn from
              his plea agreement prior to sentencing, he would have lost the
18            benefit of any cooperation and would have lost his Canadian transfer
              provision.

19

20   Reply at 18.

21        In response, Mr. Wise contends that there is cause for his procedural default because he

22   was effectively barred from raising a claim of breach of the plea agreement at the sentencing

23   hearing – *i.e.*, the Court refused to hold an evidentiary hearing, as requested (*see* Pet., Ex. 44

24   (Def.'s Sentencing Memo. at 1), on whether the government acted in bad faith in failing to file a

25   5K motion.  *See* Pet., Ex. 48 (Tr. at 49-50) (Court stating that "I'm not going to review the refusal

26   to bring a 5K1.1 motion, because I think it entails serious separation of powers questions, it

27   involves this Court delv[ing] into the prosecutorial discretion that is generally immune from

28   judicial review, except for very narrow circumstances, but one compelling situation here is that

United States District Court
For the Northern District of California

1    there is an ongoing prosecution[,] [a]nd for the Court to try to intervene and discern the basis for

2    any decision with respect to 5K1.1 or the reason to dismiss Ms. Hoegel in this case and not utilize

3    5K1.1 cooperation would implicate this Court in the middle of a current ongoing prosecution'"').

4    Mr. Wise also argues that he could not raise the claim on appeal because the "claim is based on

5    evidence that was not in the record." Opp'n at 39.

6         Mr. Wise's position is not without any basis. The Ninth Circuit has expressed some

7    question as to whether the cause-and-prejudice requirement even "applies to claims government

8    breach of an executed plea agreement" in the first place. *United States v. De La Fuente*, 8 F.3d

9    1333, 1337 (9th Cir. 1993).[17]

10        But, in any event, even if there were no procedural bar, Mr. Wise's argument on the merits

11   on this claim is without merit.

12   D.    <u>Merits of Breach Claim</u>

13        The thrust of Ms. Wise's breach claim is that the government promised him it would file a

14   5K motion based on the cooperation he had already provided (post-indictment) unless he failed to

15   fulfill his duty. The government breached that promise by not filing a 5K motion and further

16   worked against that promise by submitting inflammatory evidence against Mr. Wise such as

17   pictures of him and his girlfriends. In support of this claim, Mr. Wolf relies on statements made

18   by Ms. Brown prior to his signing of the plea agreement – in particular, her statement in an e-mail

19   that "I can't promise the extent of his 5K, but based on what he's done so far (and assuming he

20   doesn't screw up in the future), I think you can feel confident he will get a 5K recommendation

21   from me." Pet., Ex. 12 (e-mail).

22        However, Ms. Brown's statements to Mr. Wise prior to his signing the plea agreement

23   cannot form the basis of a breach of contract claim. The terms of the plea agreement are

24   _____

25   [17] Most other circuits seem to disagree. *See, e.g.*, *Elzy v. United States*, 205 F.3d 882, 885 (6th
     Cir. 2000) (stating that, "[i]n our view, the Ninth Circuit had absolutely no basis for its claim that

26   *Frady* [*i.e.*, the cause-and-prejudice requirement] may not apply to claims such as the one in *De la
     Fuente*"); *see also United States v. Snider*, 504 Fed. Appx. 674, 677 (10th Cir. 2012) (holding that

27   petitioner had to show cause and prejudice for his failure to present on direct appeal the claim that
     the government breached the plea agreement); *United States v. Rodgers*, 101 F.3d 247, 252-53 (2d

28   Cir. 1996) (evaluating claim for governmental misconduct based on breach of plea agreement
     under the cause-and-prejudice standard).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

controlling; the plea agreement contains the following provision: "I agree that this Agreement contains all of the promises and agreements between the government and me, and *supersedes any other agreements, written or oral*. No modification of this Agreement shall be effective unless it is in writing and signed by all parties." Pet., Ex. 52 (Plea Agmt. ¶ 14) (emphasis added). Mr. Wise confirmed this provision during the plea colloquy: Mr. Wise, in response to the question, "Have any promises been made to you other than what is in the agreement?," stated "None." Pet., Ex. 22 (Tr. at 10).

As to what the plea agreement says about 5K motions, the following provisions make express reference to U.S.S.G. § 5K1.1:

> 11. I agree that the government's decision whether to file a motion pursuant to U.S.S.G. § 5K1.1, as described in the government promises section below, is based on its *sole and exclusive decision* of whether I have provided substantial assistance and that decision will be binding on me. I understand that the government's decision whether to file such a motion, or the extent of the departure recommended by any motion, will not depend on whether convictions are obtained in any case. I also understand that the Court will not be bound by any recommendation made by the government.
>
> . . . .
>
> 20. *If*, in its sole and exclusive judgment, *the government decides* that the defendant has cooperated fully and truthfully, provided substantial assistance to law enforcement authorities within the meaning of U.S.S.G. § 5K1.1, and otherwise complied fully with this Agreement, it will file with the Court a motion under § 5K1.1 and/or 18 U.S.C. § 3553 that explains the nature and extent of the defendant's cooperation and recommends a downward departure.

Pet., Ex. 52 (Plea Agmt. ¶¶ 11, 20) (emphasis added).

Mr. Wise takes the position that the above plea agreement language is consistent with what Ms. Brown told him – *i.e.*, that government *would* file motion based on assistance *already provided* unless he failed to perform. However, as the government asserts, the express terms of the plea agreement is to the contrary, stating that the government will file a 5K motion *if it so decides*; this language makes clear that the government had not committed to anything. And Mr. Wise confirmed in his plea colloquy that no promises had been made to him. The plea agreement

United States District Court
For the Northern District of California

and his representation to the Court is unambiguous.  Mr. Wise cannot rely on parol evidence of a secret side agreement to claim breach of contract.  *See, e.g.*, *United States v. Buckley*, 571 Fed. Appx. 472, 476 (7th Cir. 2014) (refusing to consider the prosecutor's statements at the sentencing hearing to clarify agreed-upon sentence; "[o]ur inquiry is limited . . . to the language of the plea agreement [and] parol evidence is not to be considered"); *United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013) (stating that a "court applies general principles of contract law in interpreting the terms of a plea agreement" and that "'parol evidence is inadmissible to prove the meaning of an unambiguous plea agreement'"); *Gray v. Runnels*, 441 Fed. Appx. 420, 421 (9th Cir. 2011) (indicating that "an unambiguous oral agreement may not be contradicted by parol evidence"); *United States v. Ajugwo*, 82 F.3d 925, 928 (9th Cir. 1996) (stating that "'[a] plea agreement is contractual in nature and is subject to contract law standards'" and "'the terms of a clear and unambiguous written contract cannot be changed by parol evidence'".

## VI.   CONCLUSION

For the reasons discussed above, the government's motion to dismiss is granted and Mr. Wise's § 2255 petition is denied.

The Court also declines to issue a certificate of appealability.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (noting that a habeas petition must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).


**IT IS SO ORDERED**.


Dated: December 16, 2016

_____
EDWARD M. CHEN
United States District Judge